JAY A. HUBBELL ET AL. v. BETSY A. PALMER, EXECUTRIX, ETC.

*Contract by correspondence—Acceptance of offer—Judgment—Remission of excess above ad damnum.*

1. In this case it is held that the minds of the parties met upon the proposition of defendant's testator, contained in his letter of July 22, 1873, to pay plaintiffs $3,000 in full settlement of their services in the suits mentioned, which was accepted on the twenty-fourth day of the same month; and that the fact that plaintiffs stated in their letter of acceptance that *time* was to be of the *essence* of the settlement amounted to no more than a statement upon their part that they should insist upon the payment of the money within the time specified in the proposition made to them, and did not introduce a new term, or change the legal effect of such acceptance.

**2.** An appellant cannot complain of the act of the appellee in remitting an excess of the judgment above the *ad damnum* in the declaration, after the assignments of error are filed, he having reaped the benefit of an oversight of plaintiff in not seeking an amendment of the declaration upon the trial of the cause, which would have been granted as a matter of justice in the court below, or upon application to the appellate court.

Error to Oakland. (Moore, J.) Argued June 28, 1889. Decided October 11, 1889.

*Assumpsit.* Defendant brings error. Affirmed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*Aaron Perry* and *Hoyt Post*, for appellant.

*Mark S. Brewer* and *Aug. C. Baldwin*, for plaintiffs.

LONG, J. Sometime prior to July, 1873, plaintiffs commenced an action in the circuit court of Wayne county against Charles H. Palmer, to recover for professional services.

The claim made in the present action is that on July 22, 1873, in consideration of the promises made by Charles H. Palmer to pay to the plaintiffs the sum of $3,000 within 30 days from that date, the first mentioned suit was discontinued, and this action is brought in the Oakland circuit court to recover that sum, with interest from that date.

This suit was commenced against Charles H. Palmer in his life-time, but, he having died before trial, the suit was revived against Betsey A. Palmer, his executrix.

The declaration sets out the promise of Charles H. Palmer to pay the said $3,000, upon condition of the discontinuance of the action; and that said action was so discontinued on November 27, 1876, in reliance upon his promise to pay said sum. The declaration also is upon the common counts in *assumpsit*.

On the trial in the court below the plaintiffs had verdict and judgment for the sum of $6,091.61. Defendant brings the case here by writ of error.

On the trial in the court below it appeared that the plaintiffs were, in 1872 and 1873, and prior thereto, lawyers, doing a law business in the upper peninsula of this State. Said Charles H. Palmer was a business man, residing in Oakland county. It appears from the undisputed evidence in the case that previous to July, 1873, Mr. Palmer had employed the plaintiffs to do his legal business. There is some controversy as to the extent of the legal business done by plaintiffs for him, but, not being able to agree upon the amount due the plaintiffs, they commenced this action in the Wayne circuit court against Mr. Palmer, claiming $5,000. Mr. Palmer insisted that he was not indebted to them in that sum, or in any amount whatsoever. It seems that some talk was had between the parties, which resulted in Mr. Palmer's writing to Mr. Hubbell, as follows:

"L'Anse, July 22, 1873
"Jay A. Hubbell, Esq.,

"Dear Sir: I accept your proposition to pay you $3,000 in full settlement of your services in the Palmer and Williams suits, as well as expenses incurred in the same.
"Truly,
"Chas. H. Palmer.

"Write me at Pontiac if this is satisfactory. I will arrange to pay this $3,000 in 30 days, as I stated to you when I last saw you."

Two days after this date, and on July 24, plaintiffs wrote Mr. Palmer from Houghton, as follows:

"Dear Sir: We note contents of your letter to our Mr. Hubbell of date twenty-second inst. accepting our proposition to pay $3,000 for services in suit of Chas. H. Palmer v. John L. Spurr et al., in chancery, the same to be final settlement of all disbursements and expenses in that and the Williams suit, and have to inform you that we are satisfied to accept that sum, provided it be paid within thirty days

from July 22, the date of your letter. We wish it distinctly understood that time is of the essence of this settlement, and that we shall expect our money within the time specified.

"Yours truly,

"HUBBELL & CHADBOURNE."

The following correspondence afterwards passed between the parties:

"NILES, August 18, 1873.

"HON. JAY A. HUBBELL,

"*Dear Sir*: I have just received a telegram to attend a meeting in N. Y., having got so far on my way to L. S. Owing to the failure of the Brooklyn Trust Co., I shall not be able to pay you as I promised, but can do so in sixty days. Mr. S. Smith understands this matter. I had to pay to that institution $14,000, taking all my means at the time. If you prefer, I will transfer to you 100 shares Spurr. These would be at $30, and wouldn't be considered as a full price of the stock; but to close that matter with you.

"I shall likely be at home in a week, and then shall come up the lake. Since the Brooklyn matter I have had no time to do more.                    Truly,

"CHARLES H. PALMER."

"HOUGHTON, MICH., Aug. 23, 1873.

"*Dear Sir*: We note with surprise the contents of your favor of the eighteenth instant addressed to our Mr. Hubbell. Of our two propositions for a settlement you accepted the cash one, and we made our arrangements accordingly. Now we are hard up, and must raise this money to pay assessments long deferred on Atlantic stock. We do not consider Spurr stock worth $30 per share, but if such is the case sell 100 shares, and remit us the proceeds. This money must now be raised on a discount at bank at ten per cent. Send us your note at 60 days, payable at First National Bank of Houghton, Mich., with interest at 10 per cent., and we can use it.

"Yours truly,

"HUBBELL & CHADBOURNE.'

No reply seems to have been made to this letter, when the following was sent:

"HOUGHTON, MICH., May 16, 1874.

"CHARLES H. PALMER, ESQ.,

"Pontiac.

"*Dear Sir:* Inclosed we hand you our bill of $3,000, on

which interest is due from August 1, 1873, the time settlement was made. Our Mr. Hubbell informed us that last fall, during the stringency of the money market, you said you were unable to pay without great inconvenience, and we therefore waited from that time to this time. We need this money greatly, and hope that you will be able and willing to pay immediately. You will please add interest to date. Your earliest attention to this will oblige

"Yours truly,
"HUBBELL & CHADBOURNE."

To this Mr. Palmer replied:

"DETROIT, MICH., June 13, 1874.
"HUBBELL & CHADBOURNE,

"*Dear Sirs:* Some time since I received a letter asking for money. I am here trying to sell some Spurr stock, but so far without success. Since the panic I have had to borrow money to meet running expenses, and shall have to do this till I sell something. Money is close here, and I confine myself in the closest manner from necessity. I shall do the best I can, and as soon as possible. I am here in Fruet's suit, and so on.

"CHAS. H. PALMER."

On June 20, 1874, plaintiffs again wrote Mr. Palmer:

"We have yours of the thirteenth inst., and trust you will be able to make the arrangements you mention, as we greatly need the money. We think we have waited much beyond a reasonable time already. It is nearly two years since the services were performed for which you owe us.

"Yours truly,
"HUBBELL & CHADBOURNE."

No answer was made to this letter until September 29, 1874, when Mr. Palmer wrote plaintiffs:

"Your letter came while I was from home. I shall do for you as soon as possible. You are aware as well as myself of the difficulty of raising money in these times. It is next to impossible to do it. I have lately been to Ohio to try and sell some of my Spurr, and have a negotiation that may succeed. I shall go there again next week, and will then write you the result.

"Yours truly,
"CHAS. H. PALMER."

The contention of the plaintiffs is that these letters constituted a contract for the payment of $3,000, with interest, after 30 days from July 22, 1873, valid in law, and upon which they had a right to recover.

Defendant's counsel contend that there was no binding contract between the parties, because the letter of acceptance by Hubbell & Chadbourne introduced a new term, viz., making the time expressed of the essence of the contract. The trial court, upon this part of the case, directed the jury as follows:

"I state to you, as a matter of law, that this correspondence * * * constitutes a contract on the part of the defendant in this case to pay to the plaintiffs in this case the sum of $3,000 in 30 days after the twenty-second day of July, 1873, unless you shall find that this correspondence was induced and brought about by fraud, or by a misapprehension of material facts in the case."

In this the trial court was not in error. The letter from plaintiffs of July 24, 1873, was an acceptance of Mr. Palmer's proposition according to its very terms; and the fact that they stated in this letter that it was to be distinctly understood that time is the essence of the settlement amounted to no more than a statement upon their part that they should insist upon the payment of the money within the time specified in the proposition made to them. The minds of the parties met upon the proposition and acceptance of the payment of $3,000 within 30 days after July 22, 1873. Not only is this shown by the two letters, but all of Mr. Palmer's subsequent letters show that he recognized his obligation to pay according to the terms of the settlement, only he was constantly asking an extension of time, on account of his embarrassed financial condition, growing out of what he termed the panic in money matters.

Reading his letters as a whole, it will nowhere appear during the whole 13 months through which this correspondence was conducted that Mr. Palmer gave the contract of settlement any other interpretation, or claimed that he was not

bound by it; and the charge of the court that the jury should find for the plaintiffs upon this contract, unless it was brought about by fraud or misapprehension of material facts, was certainly placing the contract before the jury in as favorable a light as the defendant had a right to demand.

We fail to find in the record any evidence of fraud, or misapprehension of material facts; and evidently the jury were unable to find any, as their verdict was for the plaintiffs.

From July, 1873, to the time of the trial, there is nothing appearing upon this record to show that the parties ever had any personal interview, all the facts appearing from the letters passing between the parties, and, from these letters, it does not appear that Mr. Palmer was laboring under any misapprehension of the facts. The plaintiffs had made claim against him for professional services, and had brought suit. He disputed the claim, but, in consideration that they would discontinue the suit, he made his proposition to pay the $3,000 within 30 days, which plaintiffs accepted. The suit was afterwards discontinued, and before the present action was brought. The fact that it was not discontinued until the year 1876 does not affect the right of the parties.

The proposition that these letters constitute a valid and binding contract is too plain to need the citation of authorities.

One other question remains. It appears that the *ad damnum* in the declaration in the present action was only for $4,000. The amount which the plaintiffs were entitled to recover under the contract, with interest, was $6,091.61. This amount the jury gave. After the bill of exceptions was settled in the cause, writ of error issued, and assignments of error served on plaintiffs' attorney, Hon. A. C. Baldwin, his attention was called, as he claims, for the first time to the amount of the *ad damnum* in the declaration, he not having drafted it, or appeared in the cause except to appear in the trial of the cause in court, other counsel having commenced

the suit, and prepared the case. Upon the assignments of error being served, Mr. Baldwin, as counsel for plaintiffs, at once remitted upon the record the amount of the verdict and judgment in excess of the *ad damnum* in the declaration.

We find no error in this part of the proceedings. The defendant certainly cannot find fault, having reaped the benefit of an oversight of plaintiffs in not seeking an amendment of their declaration upon the trial of the cause, which, as a matter of justice, would have been granted in the court below, or upon application here.

We find no error in the record, and the judgment of the court below, less the amount of damages remitted by plaintiffs' counsel, must be affirmed, with costs.

The other Justices concurred.