BOLLENBACHER *v.* REID.

1. SALES—CONTRACTS—REQUISITES—MEETING OF MINDS.

Plaintiff, a contractor and broker, after preliminary negotiations, made an offer to defendants to furnish cut stone for a "court-house and jail." Other following correspondence related to furnishing stone for one or the other of the buildings but not for both. In reply to an inquiry from plaintiff as to whether or not he was to furnish the stone, defendants telegraphed: "We accept your bid for cut stone for court-house and jail here," confirming the telegram by a letter. *Held,* there being no doubt what proposition defendants accepted, the minds of the parties met and the contract was fully executed.

2. SAME—CONTRACTS—REQUISITES — TIME OF DELIVERY— TIME OF PAYMENT.

A contract of sale, made by proposal and acceptance thereof, is binding and valid although it omitted to specify the time of delivery and payment; since the law implies a delivery within a reasonable time, and fixes the time of payment to be upon the delivery of the goods.

3. SAME—CONTRACTS—FORMAL CONTRACTS—CERTAINTY.

Where, in a contract of sale made by proposal and acceptance thereof, no mention is made of the execution of a formal contract and the furnishing of a bond for the amount thereof, a demand therefor does not qualify its terms, since the parties were bound by the contract made.

Error to Wayne; Rohnert, J. Submitted November 18, 1908. (Docket No. 118.) Decided December 21, 1908.

Assumpsit by George W. Bollenbacher against Edward W. Reid and Wallace B. Reid, copartners as E. W. Reid & Co., for breach of contract for the sale of certain stone. There was judgment for defendants on a verdict directed by the court, and plaintiff brings error. Reversed.

*Maybury, Lucking, Emmons & Helfman (Harry V. Blakeley,* of counsel), for appellant.

*Geer, Williams, Martin & Butler,* for appellees.

The plaintiff is a contractor and broker, residing in Bloomington, Ind., dealing in Bedford stone. Defendants are contractors and builders, who had secured a contract for the erection of a court-house and jail in the city of Flint, Mich. The contract called for the use of Bedford stone. Plaintiff claims that he made a contract with the defendants to furnish the stone, and that the defendants repudiated the contract. He instituted this suit to recover profits lost by reason of the repudiation. The contract is in writing, and, if made, was made by correspondence between the parties. The negotiations were commenced by a letter from the defendants to the plaintiff, dated July 27, 1903, asking for prices on balusters, columns, etc. On July 28th plaintiff replied, quoting prices, stating that he could not give a price on capitals without sketch showing amount of carving and asked for sketches, saying that he would then name his lowest prices. July 30th defendants wrote a letter, inclosing sketch of columns with turned bases and carved capitals and carved pilaster caps. They also asked prices on dimension stone. On August 3d plaintiff replied quoting prices. On August 12th defendants wrote plaintiff as follows:

"*Dear Sir:* We have contract for court-house and jail here. There will be about 4,000 cu. ft. of cut stone in this work. There will be considerable carved work and some moulding and plain; also some turned columns and balusters. We would like to know if we send you the plans and specifications if you can give us a lump bid on this work, all cut and ready to put in the building ? Please advise us by return mail."

August 14th plaintiff replied, requesting them to send plans and specifications, and saying that he would make a lump bid. August 18th the plans, specifications, and

details were sent. In the letter defendants asked figures on all cut stone work cut for building f. o. b. Flint. On August 25th plaintiff wrote defendants:

"*Gentlemen:* In reply to yours of the 24th, we beg to say that I am returning by express today your plans of court-house and sheriff's residence. I will furnish all cut stone for court-house that is specified Bedford stone for the sum of $7,800.00 f. o. b. Flint, Mich., cut ready to set. I will furnish all the cut Bedford stone ready to set for the sheriff's residence and jail for the sum of $454.00 f. o. b. Flint, Mich. Trusting these figures will meet your views and I shall hear from you soon, I am," etc.

August 26th defendants wrote plaintiff as follows:

"*Dear Sir:* Please advise us by return mail whether you intend to do the carving for this work at the quarries, or if the stone will be shipped here and carved at the building. In case you intend to carve the stone at the quarries, state whether it will be crated there or not, and whether there would be any extra charge for crating. Also state whether the stone would be all jointed to the right length. We want to know just what cutting we would have to do here, if any. Also state whether you intend to water-rub the stone as is specified."

On August 27th plaintiff replied as follows:

"Replying to yours of the 26th, beg to state that we are undecided whether or not we will do the carving at the quarry or in the building, if the former we will crate it without extra charge. The stone will be cut and rubbed ready to set in the wall as shown by plans and specifications. If awarded the contract, will place it with a responsible stone company. Hoping to hear from you soon, I am," etc.

August 29th defendants again wrote plaintiff:

"Will you please quote us price on cut stone, finished ready to set in building, except the carving. We want the carved blocks for pilasters, columns, and keystone sawed four sides, and balance finished complete on cars here."

August 31st plaintiff answered:

"Replying to yours of the 29th, beg to say that I will

furnish the Bedford stone all cut ready to set in the wall for the sum of $6,840.00, as shown on plans and specifications for the Genesee court-house, except that it does not include carving and the blocks for pilaster, columns, and keystones to be sawed 4 sides and balance finished complete f. o. b. cars, Flint, Mich. I want to hear from you at once, for the reason that mills are crowded with work. Hoping to hear from you soon, I am," etc.

September 4th plaintiff wrote defendants:

"I have been expecting to hear from you by each mail. If I am to do the work I want to know as soon as possible as mills are being crowded with fall work."

To this defendants replied by telegram September 9th:

"We accept your bid for cut stone for court-house and jail here."

Simultaneously with that telegram the defendants wrote the following letter:

"We will accept your bid of $8,254.00 for all of the Bedford stone for the court-house, sheriff's residence, and jail here. All cut and carved and finished ready to set in the building f. o. b. cars Flint. And have telegraphed you to that effect this morning. We will want the stone for the sheriff's residence and jail first. We will want it all by the 15th of October. And we will want the stone for basement of court-house, including water table, about November first. And the balance of stone on or before April 10th, 1904. We have plenty of room here for the stone, and can take it all at once if convenient for you. We will forward you the plans and specifications by express today. We will also send you contract. And ask that you furnish us a surety company's bond for the amount of the contract."

On the same day, after receiving the telegram, plaintiff wrote defendants:

"Your wire awarding me the contract for the cut Bedford stone for court-house and jail received. As soon as you send me the plans, specifications, and fullest details will commence on same. I have sublet this contract to South Side Stone Co., of this city, a responsible firm. Awaiting your further commands, I am," etc.

On the 12th plaintiff wrote defendants as follows:

"Plans and specifications here. The South Side Stone Co. will commence on cut stone work as soon as full size details reach us. In regard to security company bond, will say that we have never given a bond, but can do it. I have been selling stone for ten years and have never failed in delivering the stone. You can retain 20 per cent. of every invoice of stone until all stone is delivered. Our terms are cash in 30 days from date of invoice. The South Side Stone Co. is responsible and will give you the stone and workmanship called for in the plans and specifications. Send F. S. D. at once."

On September 14th defendants wrote plaintiff, inclosing a contract which they requested him to sign and return with a surety company's bond for the amount of the contract, saying:

"We do not question your ability in the least to complete this contract, but, as we are obliged to give bonds to secure labor, material, and also to complete the work, we consider it only a matter of business to ask you to furnish us a bond for your part of the work."

On September 18th defendants wrote plaintiff:

"We believe we are wasting time fooling with you. Please return plans and specifications at once, and oblige."

Other letters passed between the parties, but we do not think them material. When the plaintiff had rested, the court directed a verdict for the defendants, holding that there was no completed contract, because the telegram did not state to which proposition it was in reply—that is, that it might apply to the proposition contained in the letter of August 25th, or to that contained in the letter of August 31st—and for the further reason that the defendants inclosed the contract in the letter of September 14th "apparently with the idea of having the terms of the contract definitely defined in a writing, and not left undetermined upon the letters so far as written."

GRANT, C. J. (*after stating the facts*). 1. That the defendants intended by their telegram to accept a definite

proposition made by plaintiff to them is beyond doubt. They did not say:

"We accept or will accept one of your two propositions."

Such a telegram would have been absurd. They said:

"We accept your bid for cut stone for court-house and jail here."

That telegram of acceptance referred only to one proposition, and was clearly intended to be so understood by the plaintiff. Both understood the proposition to which it referred. This is evidenced by the terms of the letter of plaintiff and the telegram of defendant and letter sent by them just after the telegram was sent. There was no room for misunderstanding. If defendants had intended to leave a doubt as to which proposition their telegram referred, they would have used language appropriate to express that purpose. They knew from plaintiff's letters the importance of haste in the matter, and the necessity urged by plaintiff for a determination at once. The proposition in the letter of August 25th proposed to furnish stone for the court-house and jail, two separate buildings. It was the only letter of the two using the terms "court-house and jail." The telegram used the same words. That proposition included the carving. Four days later defendants asked a proposition to furnish the cut stone without the carving for the Genesee court-house, not the court-house and jail. The first proposition referred to two buildings, the latter to one. There being no doubt what proposition the defendants accepted, the minds of the parties met and the contract was fully executed.

2. Was the contract made by the proposal and acceptance sufficiently definite and clear in its terms to make a binding contract? It contained all the essentials of a complete contract, to wit, the amount "all cut stone for court-house and sheriff's residence and jail." It fixed the price and place of delivery. It omitted to specify the

time of delivery, but this was not essential. Where no time for delivery is fixed by the contract, the law implies delivery within a reasonable time. *Stange* v. *Wilson*, 17 Mich. 342; *Bolton* v. *Riddle*, 35 Mich. 13. It fixed no time of payment. The law fixes the time of payment under such a contract to be upon the delivery of the goods. *Lamont* v. *LeFevre*, 96 Mich. 175. The execution of a formal, written contract was not mentioned in the correspondence; neither was one required. The contract was not qualified by the subsequent letter of the same date requesting a bond, nor by the request for a formal written contract. *Culton* v. *Gilchrist*, 92 Iowa, 718; *H. H. King & Co.* v. *Dahl*, 82 Minn. 240; *Turner* v. *McCormick*, 56 W. Va. 161 (67 L. R. A. 853); *Sanders* v. *Fruit Co.*, 144 N. Y. 209 (29 L. R. A. 431); 9 Cyc. pp. 290, 291; *Hubbell* v. *Palmer*, 76 Mich. 441; *Farrow* v. *Bresler*, 108 Mich. 564. There is nothing in the correspondence to indicate that the parties understood that they were making a merely preliminary agreement, and that a contract complete in all its terms was to be subsequently executed. Either party was at liberty to refuse to execute a formal agreement, relying upon the written agreement already established by the correspondence. Even if there had been an understanding that a contract was to be executed and one of the parties had afterwards refused to sign it, he would still be bound by the contract established by the correspondence. *Sanders* v. *Fruit Co.*, supra.

The judgment is reversed, and new trial ordered.

BLAIR, MONTGOMERY, OSTRANDER, and BROOKE, JJ., concurred.