F. B. HOLMES & CO. *v.* CITY OF DETROIT.

1. Contracts — Interpretation — Unilateral Agreements — Mutuality.
   A contract to furnish to the city of Detroit all the Portland cement that may be required by it and ordered by its department of public works during a given year, in consideration of a fixed price per barrel, entered into in pursuance of an advertisement for proposals fixing the amount at "5,000 barrels, more or less, as may be required by the department of public works," is mutual and binding.

2. Same—Breach—Municipal Corporations.
   Such contract does not by its terms limit the amount of cement to 5,000 barrels, and the contractor is bound to furnish the entire amount required by the municipality.

Error to Wayne; Murphy, J. Submitted April 16, 1909. (Docket No. 42.) Decided September 21, 1909.

Assumpsit by F. B. Holmes & Company against the city of Detroit for goods sold and delivered. A judgment for plaintiff on a verdict directed by the court for less than the amount claimed is reviewed by plaintiff on writ of error. Affirmed.

*Gray & Gray,* for appellant.

*Walter Barlow* (*P. J. M. Hally,* of counsel), for appellee.

McAlvay, J. Plaintiff brought suit against defendant to recover for an amount claimed to be due for certain cement furnished by it under a certain agreement entered into between the parties. Defendant on January 11, 1906, through the department of public works, advertised for proposals for furnishing "5,000 barrels of Portland cement more or less as may be required by the department of public works from the date of contract to January 31, 1907,"

to be delivered in sacks at a warehouse within the control of the board in a designated locality. Plaintiff tendered a proposal in writing to furnish the cement in sacks "as per your advertisement of January 11, copy of which is hereto attached," at $1.69 per barrel, and to repurchase the sacks at 7½ cents each. On February 15th following, the parties entered into a written contract, in which plaintiff agreed—

"To furnish all the    *    *    *    Portland cement that may be required by the city of Detroit and ordered by the department of public works in and during the year ending January 31, 1907,    *    *    *    said cement to be delivered in such quantities and at such times as the department of public works may direct.    *    *    *    The furnishing of said Portland cement to be according to the specifications and proposals hereunto attached and made a part of this contract."

The agreement of defendant in this contract was—

"To pay the said first party the compensation in the manner provided, that is to say, the sum of one dollar and sixty-nine cents ($1.69) for each and every barrel of Portland cement delivered and satisfactory to the department of public works."

A bond was required and furnished by plaintiff to the defendant in the sum of $3,500, conditioned that if plaintiff,—

"Who has executed the annexed contract for furnishing all the Portland cement that may be required and ordered by the department of public works in and during the year ending January 31, 1907,    *    *    *    shall in all respects well and faithfully execute and perform," etc.

Plaintiff also furnished as required a bond to the people of the State of Michigan in the sum of $3,500, which recites that plaintiff has agreed—

"To furnish all the Portland cement that may be required and ordered by the department of public works in and during the year ending with January 31, 1907."

The foregoing papers, together with the specifications

for Portland cement, were attached and constituted the contract between the parties.   Under this agreement, according to its terms, plaintiff having furnished 6,242¼ barrels of Portland cement, upon orders of the department of public works, on September 4, 1906, wrote to defendant, as follows:

"Mr. J. J. HAARER,
        "Commissioner Dept. of Public Works,
                                "Detroit, Mich.
    "*Dear Sir:*  In accordance with advertisement for Portland cement we were to supply you five thousand barrels, more or less, and in this connection would say we have supplied up to the first of September 6242¼ barrels, and since then a considerable quantity.

    "We think the more or less quantity should not exceed 20% on the face of the amount, and as cement has advanced very materially and we are losing money on every barrel of cement we are furnishing to you we think that we have fulfilled our agreement and should not be expected to fill any more except at an advanced price, which we will make to you at just the cost of the material.
                    ."Yours respectfully,
                        "F. B. HOLMES & COMPANY."

On September 6th plaintiff refused an order for 100 barrels of cement given by defendant, and on the following day again wrote:

    "*Dear Sir:*  Under our contract for the furnishing of Portland cement to the city of Detroit, based upon your call for proposals, dated January 11th, 1906, we have upon your order already delivered over 6,200 barrels. This is more than 20 per cent. in excess of the 5,000 barrels specified in your call.   We are advised that we are not under obligation to furnish any more cement and you are notified hereby that we shall not furnish any more cement under said contract."

On the same date the commissioner of public works notified plaintiff in writing that the contract would be enforced, and that the cement required would be purchased in the open market, and plaintiff and its bonding company held responsible for excess in cost.

The following facts are stipulated:

"*First*. At the time the notice of September 7, 1906, was given, the plaintiff had delivered 6,833¼ barrels of cement at the aggregate contract price of $10,878.73, upon which there had been paid in sacks and money $9,361.25, leaving unpaid $1,517.48.

"*Second*. After September 7, 1906, and prior to January 31, 1907, the plaintiff furnished and delivered to the defendant 3,715 barrels of cement, as set forth in the notice attached to defendant's plea, all of which has been paid for in full by the defendant, such payment being $1,079.04, in excess of what the defendant would have been required to pay under the prices named in said contract of February 15, 1906.

"*Third*. That at varying times, between the 13th and 21st days of September, 1906, defendant purchased in the open market and at the market prices and values from other parties and paid for 1,017½ barrels of cement at a cost of $1,966.77, which was $425.97 in excess of what the defendant would have been required to pay at the prices named in said contract of February 15, 1906.

"*Fourth*. That after September 7, 1906, and prior to January 31, 1907, in addition to the amount delivered and paid for as set forth in paragraph 2, plaintiff furnished and delivered to defendant 832 barrels of cement, 644 barrels at $1.68 per barrel, and 188 barrels at $1.98 per barrel, making a total of $1,455.17, being $242.29 more than the price named in the contract of February 15th. Against this, defendant is entitled to $503.60 credit for sacks returned, and $11.39 for 5¾ barrels of cement returned to plaintiff, which had been paid for in the amount included under paragraph 2.

"*Fifth*. All of the cement received by the defendant after September 7th, as hereinbefore stipulated, was required by the department of public works. If, after giving the notice of September 7, 1906, the plaintiff was not obliged to furnish any more cement under the contract of February 15, 1906, then the plaintiff is entitled to recover from defendant (including interest) $2,703.42; but if, on the other hand, the plaintiff was bound, after giving the notice of September 7, 1906, to continue furnishing cement under the contract of February 15, 1906, then there should be deducted from said amount the excess cost of the cement gotten by defendant after September 7, 1906, to wit, $1,747.32, leaving the net amount due plaintiff (with interest) $781.37."

Plaintiff requested the court to direct a verdict in its favor for the sum of $2,703.42. This request was refused, and a verdict was directed for plaintiff for $781.37. We are asked to reverse this judgment upon claimed errors of the court, which are assigned as follows:

(1) Because the court refused to admit testimony as to the amount of cement delivered by plaintiff to defendant under the contract of 1905.

(2) Because the court refused to admit testimony as to the amount of cement which plaintiff provided for the purpose of filling the contract (Exhibit 1).

(3) Because the court refused to direct a verdict for plaintiff for $2,703.42.

There is no dispute as to the facts in the case. It turns upon the construction of the written agreement between the parties. The contentions of the plaintiff are:

(*a*) That the contract covers nothing beyond 5,000 barrels "more or less" and was fulfilled when 6,833¼ barrels had been delivered.

(*b*) That this was a mere offer by plaintiff to furnish cement at a given price and the offer was withdrawn before acceptance either for a fixed amount or what the city required.

(*c*) That the agreement was unilateral.

The specifications and proposals were made part of the contract.

It will not be necessary, in giving a construction to this agreement, to go outside of the writings which are attached to and made a part of it. The proposals solicited by the advertisement were—

"For furnishing and delivering * * * according to the specifications 5,000 barrels of Portland cement, more or less, as may be required by the department of public works from date of contract to January 31st, 1907."

The proposal submitted by plaintiff under and according to the terms of this advertisement was accepted. The plaintiff and defendant entered into the contract on February 15, 1906, to furnish "all the Portland cement * * * that may be required by the city of Detroit and

ordered by the department of public works in and during the year ending January 31, 1907," and defendant agreed to pay the stipulated price for each barrel of cement delivered. The department of public works is one branch of the municipal government of Detroit. This department alone could order the cement which was to be used in the public improvements carried on by it. The department was not the municipality, so we find in the contract the agreement to furnish the city of Detroit all the Portland cement that may be required by it and ordered by the department of public works.

We may eliminate the contention that this was a unilateral contract. The proposition of plaintiff was accepted by defendant. It was certainly agreed that plaintiff should furnish cement, and defendant would pay for it. After the contract of February 15th, this proposition was not subject to withdrawal. This contract covered all the cement required by defendant during the year ending January 31, 1907, for the use of the department of public works. It was a mutual agreement, binding upon both parties. We find no difficulty in ascertaining the prime object and purpose of these parties as expressed in the writings considered. They had in mind so many barrels of cement as the operations of this department would require during this period. The exact amount of cement which would be required could not be known at the time of entering into the contract, as the first meeting of the board of estimates does not occur until in March. The clause "5,000 barrels of Portland cement, more or less," was the expression of an estimate subject to the controlling object of the agreement expressed in the words of the contract, "all the Portland cement that may be required by the city of Detroit and ordered by the department of public works," the last clause expressing the method required to secure the delivery of the property to defendant.

This is not within the line of cases where the agreement construed turned upon the acceptor's "wish," "desire," or other like contingency. There is no reason that, under

this contract with the municipality, the same rule should not be applied as in the case of an established business in construing the clause "as may be required" and the construction be given as if reading "all of the Portland cement which may be required." This case is within the rules laid down in the cases relied upon and cited in the opinion of the trial court, viz.: *Brawley* v. *U. S.*, 96 U. S. 168; *Merriam* v. *U. S.*, 107 U. S. 437 (2 Sup. Ct. 536); *Day* v. *Cross*, 59 Tex. 595. And also the following cases: *Coldblast Transportation Co.* v. *Kansas City Bolt & Nut Co.*, 114 Fed. 77 (52 C. C. A. 25, 57 L. R. A. 696); *E. G. Dailey Co.* v. *Clark Can Co.*, 128 Mich. 591 (87 N. W. 761). See, also, *Marx* v. *American Malting Co.*, 169 Fed. 582.

The judgment is affirmed.

Blair, C. J., and Grant, Montgomery, and Brooke, JJ., concurred.