STUART *v.* HOME TELEPHONE CO. OF DETROIT.

1. Contracts—Offer and Acceptance—Formation.
   After plaintiffs offered to furnish defendant a certain number of castings for manhole frames and covers, defendant replied that it accepted the proposition to supply its requirements up to a large quantity, subject to minor detailed specifications; and plaintiff replied advising defendant of the entry of the order as directed and that it would receive prompt attention. *Held*, to constitute a contract.

2. Same—Construction—Quantity.
   A contract to furnish requirements of defendant up to 500 of a certain manufactured article, is a contract to furnish 500 if needed in defendant's work.

3. SAME—EVIDENCE—PREVIOUS DEALINGS.

    In support of plaintiff's contention that it performed the contract substantially, it was not error to admit a letter of defendant, stating that plaintiffs performed a similar contract during the preceding season satisfactorily; the evidence showing deliveries of the property in a like manner.

Error to Wayne; Hosmer, J. Submitted February 7, 1910. (Docket No. 115.) Decided April 1, 1910.

Assumpsit by Johnson Stuart and Walter Stuart, copartners as the Co-operative Foundry Company, against the Home Telephone Company of Detroit for breach of a contract for the sale of certain castings. A judgment for plaintiffs is reviewed by defendant on writ of error. Affirmed.

*T. A. E. & Thomas J. Weadock*, for appellant.

*Corliss, Leete & Joslyn*, for appellees.

McALVAY, J. Plaintiffs are copartners engaged in business as foundry men under the name of "Co-operative Foundry Company." Defendant is a Michigan corporation, and in the year 1907 was engaged in constructing a telephone plant, and laying its wires in the city of Detroit. This controversy relates to certain castings which plaintiffs claim were manufactured by them under a contract with defendant, a large number of which defendant refused to receive and pay for. During the season of 1906, these parties had dealings for the same kind of castings made at the same plant. The claimed contract upon which plaintiffs rely grew out of a conversation between one of them and defendant's agent, Mr. Daniels, early in 1907, relative to the price of manhole frames and covers.

As a result of this conversation, plaintiffs sent the following letter to defendant's agent:

                        " DETROIT, MICH., April 8.

"Mr. DANIELS, PUR-AGT.,

              " Home Telephone Company,

                      " City.

    " *Dear Sir:* We will be pleased to furnish you with

375 manhole casings according to blueprints and standard weight, approximately 1,000 lbs. at $25.00 each. Delivered at storage yard or on line of work.

"Respectfully yours,
"CO-OPERATIVE FOUNDRY,
"JOHNSTON STUART."

To this defendant replied:

"April 13, 1907.
"CO-OPERATIVE FOUNDRY CO.,
"Junction and Henrietta Sts.,
"City.

"*Dear Sirs:* We have your letter of April 8th to hand, in which you quote us on manhole frames and covers as per blueprints and specifications submitted at the rate of twenty-five dollars ($25.00) each, net, and we herewith beg to advise you that we accept your proposition in which you agree to furnish our requirements up to the amount of 500 of these manhole frames and covers, each weighing approximately 1,000 lbs. and to conform with blueprints which you have now on file.

"These manhole frames and covers are to be delivered upon the streets of the city of Detroit as we may require them from day to day as per our orders over the telephone, which will be followed by a written order, and we reserve the right to reject any manhole frame or cover which may be defective.

"Trusting you will confirm this by letter at an early date, and thanking you for the courtesy you have shown us in the past, we beg to remain,

"Yours very respectfully,
"HOME TELEPHONE COMPANY,
"W. B. WOODBURY,
"General Manager."

Plaintiffs answered as follows:

"HOME TELEPHONE COMPANY,
"Detroit, Mich.

"*Gentlemen:* We have entered your order for 500 manhole frames and covers, delivered, as directed; at storage yard or on line of work.

"Thanking you for the order, which will receive our prompt and careful attention, we are,

"Yours respectfully,
"CO-OPERATIVE FOUNDRY,
"JOHNSTON STUART."

Whatever contract was made is contained in the foregoing correspondence. Under this arrangement, plaintiffs delivered 288 manhole frames and covers as directed by defendant. Then no further orders came in. Plaintiffs went to Mr. Daniels, agent, and Mr. Woodbury, general manager, of defendant, and wrote several letters to their general manager between July 25th and October 9th giving the number of castings on hand awaiting orders for delivery and asking for an explanation. None of these letters were answered except the last one, which asked for two or three days' time to advise with the general manager. It was written by the purchasing agent who succeeded Mr. Daniels. The record shows that defendant was procuring these castings from other sources. It also appears that more than 500 of these castings were required and used by defendant in the prosecution of its work. Plaintiffs claimed that they were at all times ready and willing to furnish and deliver the full number of 500 manhole castings, and did deliver all that were ordered without default; that they manufactured the number on hand when defendant defaulted, by order of its agent so as to be ready for delivery; and that they were entitled to recover the full price of those on hand and loss of profits on the balance of the contract number to make up the full quota of 500. On the part of the defendant it was claimed on the trial that the writings did not amount to a contract; that all the castings delivered were paid for; and that, in any event, plaintiffs had defaulted by unreasonable delay in delivering, and could recover no loss of profits. The court construed the writings as amounting to a contract and adopted plaintiffs' theory of recovery; if not in default on their part. The jury, under the charge of the court, returned a verdict for plaintiffs, and a judgment was entered accordingly. Defendant is here upon a writ of error asking a reversal. It is urged on its part that the court erred: (a) In holding that a contract was entered into between the parties; (b) in

admitting and rejecting certain testimony; and (c) in refusing to grant a new trial.

The important question is whether the minds of these parties met and a contract was made between them. We need not repeat the letters already given, but we must consider them as parts of one transaction. The proposition by plaintiffs which the record shows was made at the suggestion of defendant's agent, is received and considered favorable. The price, weight, etc., are satisfactory. More castings, however, are desired than plaintiffs offer. Defendant writes:

"We accept your proposition in which you agree to furnish our requirements up to the amount of 500 of these manhole frames and covers    *    *    *"—specifying minor details.

The terms of the proposition are in other respects accepted. A request is added by the words, "Trusting you will confirm this by letter." Plaintiffs promptly reply:

"We have entered your order for 500 manhole frames and covers, delivered as directed.    *    *    *    Thanking you for the order, which will receive our prompt and careful attention, we are," etc.

The confirmation requested was certainly intended, and in our opinion, by a fair construction of this last letter, was given, and was an acceptance of the altered terms of the proposition. We understand the contention to be that this did not amount to an acceptance. The word "accepted" is not used; but the statement that the order had been entered by plaintiffs and thanking defendant for the order, with the assurance that it would receive prompt and careful attention, leaves no doubt or ambiguity as to what was done. *Bollenbacher* v. *Reed*, 155 Mich., at page 282 (118 N. W. 933). This was the practical construction given by both parties at the time and upon which  both acted for a long time afterwards. The testimony of defendant's general manager recognizes "this contract" which he had ordered canceled. The notice under the plea of the general issue admits that the work and labor,

etc., "were done and furnished under a special contract or agreement in writing made and entered into between the parties by correspondence, by which plaintiffs agreed to furnish 375 manhole covers at $25.00 each," claiming default by plaintiffs, in not furnishing in time; being 87 more than were ordered and delivered.

We do not find anywhere in the record, either orally or in writing, before suit, defendant at any time made a claim that a contract was not entered into with plaintiffs, although plaintiffs were persistently, in writing, calling attention to the fact. *Hubbell* v. *Palmer*, 76 Mich. 446 (43 N. W. 442).

In the case of *Cooper* v. *Lansing Wheel Co.*, 94 Mich. 272 (54 N. W. 39, 34 Am. St. Rep. 341), a similar question was before this court. In a well-considered opinion by Mr. Justice MONTGOMERY, the court said:

" If it be held, as we think the proper doctrine is, that an offer to furnish such goods as the plaintiff may want within a stated time may, upon acceptance by the offeree before withdrawal, constitute a valid contract, it is difficult to see why, if the offeree orders any portion of the goods, and the offerer has the benefit of the sale, the entire contract may not become valid and binding. This certainly would constitute a sufficient consideration."

In that case the buyer (who was plaintiff) wrote, " Please enter our order for what wheels we may want," etc. In the instant case the buyer wrote:

" We accept your proposition in which you agree to furnish our requirements up to the amount of 500 of these manhole frames and covers. * * * Confirm this by letter at an early date," etc.

Three days later plaintiffs wrote, " We have entered your order," etc. On this agreement orders were sent in, delivered, and paid for, from time to time, amounting to $7,200. We are unable to distinguish these cases.

Construing the clause in this contract, " to furnish our requirements up to 500 of these manhole frames and covers," the court held that it was a contract for 500, if that

number was required for use in defendant's work. The construction of the court was correct. *F. B. Holmes & Co.* v. *City of Detroit*, 158 Mich. 137 (122 N. W. 506), and cases cited.

We have examined the numerous assignments of error on the admission and rejection of testimony. We will consider briefly such as require attention. Objection was made to the admission of a letter from defendant to plaintiffs, written on the close of the business between them during the previous season. It expressed entire satisfaction, and was admitted in connection with testimony tending to show that the deliveries were made in the same manner as during 1907. This was not error.

Much of the record is taken up with the testimony, pro and con, upon the claim of defendant that plaintiffs were dilatory in their delivery of the castings. From our examination, we are satisfied that no immaterial testimony was allowed, or that which was material to this issue of fact excluded. The question was for the jury and was submitted under proper instructions. Several errors are assigned upon the construction of the contract by the court, and his charges to the jury relating thereto. Such construction was entirely in harmony with our construction of the writings.

It follows that the motion for a new trial, which was based upon the contentions of defendant which this opinion has not accepted, was properly denied by the court.

We do not find error in the case.

The judgment is affirmed.

MONTGOMERY, C. J., and BROOKE, BLAIR, and STONE, JJ., concurred.