ATHOL MANFG. CO., *v.* BRISCOE MOTOR CORPORATION.

1. Contracts—Evidence as to What Constituted.
   Where defendant sent in its order for goods to plaintiff with the request that plaintiff sign same and return it, but, instead of doing so, plaintiff made up a sales note on its own forms which it sent to defendant requesting it to sign and return one copy, which it did, plaintiff's sales note constituted the sole contract between the parties, and the trial court properly refused to admit defendant's order in evidence.

2. Estoppel — Breach of Contract — Defenses — Rescission — Waiver of Default.
   In an action by the seller for damages for the breach of certain contracts to purchase a certain quantity of artificial leather, where, although plaintiff was more than six months in default in making deliveries, defendant continued to deal with it on the theory that the contracts were still in force and requested that deliveries be deferred, and afterward rescinded the contracts on the ground of business depression, it is estopped from defend-

ing on the ground that the contracts were rescinded on account of plaintiff's breach.

3. DAMAGES—BREACH OF CONTRACT.

In computing plaintiff's damages, defendant was entitled to an instruction that it would not be held liable for the loss on the entire amount of raw material required for its orders if the full amount thereof was never delivered to plaintiff, but defendant's liability would be limited to the loss on the amount delivered and unused by plaintiff in filling defendant's orders or on other jobs.

4. SAME—PLAINTIFF'S DUTY TO MINIMIZE ITS LOSS.

If, when defendant canceled its contracts with plaintiff, the dealer with whom plaintiff had a contract for its raw materials was in default, it was its duty to take advantage of said default and cancel its contract, thereby lessening as far as possible the damages which defendant would be called upon to pay.

5. SAME.

That the raw materials were ordered by plaintiff nearly a month before defendant's orders were received is immaterial if they were held for use in filling defendant's orders and the price in the meantime had not dropped.

6. SAME—PLAINTIFF'S RIGHT TO RECOVER DAMAGES LIMITED BY ITS LOSS.

It is immaterial whether or not plaintiff had paid for said raw materials, if it was obligated to pay therefor; but upon such part as it had been relieved of its obligation to pay it could not recover from defendant.

Error to St. Clair; Tappan (Harvey), J. Submitted October 25, 1922. (Docket No. 89.) Decided March 22, 1923.

Assumpsit by the Athol Manufacturing Company against the Briscoe Motor Corporation for breach of a contract for the purchase of artificial leather. Judgment for plaintiff. Defendant brings error. Reversed.

*Forrest C. Badgley,* for appellant.

*Henry B. Graves* and *Mark L. Rowley,* for appellee.

BIRD, J.   Plaintiff is engaged in the manufacture of artificial leather at Marysville, in St. Clair county, and its office is in Athol, Massachusetts.   Defendant, in 1920, was engaged in manufacturing automobiles in the city of Jackson.   In January, 1920, defendant placed an order with plaintiff for 37,000 yards of artificial leather.   This was followed by another order in February for 35,500 yards.   Subsequently 13,122 yards were canceled by consent of the parties. The first order was to be delivered to defendant in May, June, and July, 1920.   The second order was to be delivered in June, July, August, September, and October, 1920.   Defendant refused to receive more than a small portion of the yardage called for by these contracts, and this suit was begun to recover damages for a breach of them.   A jury awarded plaintiff nearly all, if not its entire claim.

1. Defendant's first complaint is on account of the ruling of the trial court as to what papers constituted the contract between the parties.   In making these orders it appears defendant used its regular order blanks for purchasing materials, which contains some reservations as to cancellation of the contract.   The first order was signed and forwarded to plaintiff for its signature.   Plaintiff did not sign it, but made up a sales note on its own forms, embodying the essentials of defendant's order, signed it and sent it to defendant, in duplicate, requesting it to sign and return one copy.   Defendant, after some hesitation, did this and returned one copy to plaintiff, as requested.   The same course, substantially, was followed in the second contract.   Upon the trial defendant offered its orders in evidence, claiming that they constituted parts of the contracts, but the trial court refused to admit them and held, as a matter of law, that plaintiff's sales notes constituted the sole contracts.

222—Mich.—7.

Defendant contends this was error.    Its position is that plaintiff really embodied the essential elements of its order in its sales notes, and annexed certain conditions and reservations, and that the contract must be gathered from both, defendant's order and plaintiff's sales note, and in support of this contention counsel cites the following cases:   *Hubbell* v. *Palmer*, 76 Mich. 446; *Stuart* v. *Telephone Co.*, 161 Mich. 127; *Bollenbacher* v. *Reid*, 155 Mich. 282; *Butler* v. *Foley*, 211 Mich. 668; *Robinson* v. *Telegraph Co.*, 169 Mich. 514.

Plaintiff's counsel point out that the cases cited do not apply to this situation because in each one of them the order was first unqualifiedly accepted, and then the offeree added a precatory statement in the form of a warning or a request or a suggested modification. Plaintiff calls attention to the fact that these orders in suit were not accepted, but their receipt was acknowledged and a counter proposal in the form of a sales note was prepared by plaintiff, and when this was signed by both parties it constituted the sole contract.

We think this distinction is well taken.    It is quite manifest from the conduct of plaintiff that it did not intend to acquiesce in the conditions and reservations of defendant's order.    It did not accept, neither did it sign, defendant's order, but prepared its own contract with different reservations and conditions, and requested defendant to sign, which it did.    .We think this conduct on the part of plaintiff indicates that it did not intend to be bound by the conditions and reservations in defendant's order.    If it had it would not have taken the trouble to have substituted its own.    It does not appear to us that the trial court was in error when it instructed the jury, as a matter of law, that plaintiff's sales notes constituted the sole contracts between the parties.

2. Were the contracts breached by plaintiff and were the breaches waived by defendant? The time fixed by the first contract for delivery was one-third in May, one-third in June, and one-third in July, 1920. The second contract was to be delivered in equal quantities in June, July, August, September, and October, 1920. On October 1, 1920, only a small amount of the yardage had been delivered. Plaintiff was clearly in default in making its deliveries at the time specified in the contracts. We infer from the briefs that this is conceded by plaintiff. But plaintiff says defendant did not rescind the contracts on this account, but continued to deal with it as though the contracts were in force, and while defendant asked it on several occasions to defer deliveries, it did so on the theory that the obligations were still in force. In view of this it is claimed defendant is estopped now to claim that the contracts were rescinded on account of the breaches.

The testimony shows that at the time plaintiff was in default in making deliveries defendant commenced to request plaintiff to slow down in making deliveries, and gave as a reason therefor that it had cut down production. This excuse was given in several of defendant's letters. We do not find that defendant, from September 1, 1920, to March 14, 1921, when the contracts were rescinded, ever exercised its right to rescind. But defendant replies it did not accept deliveries after September 1st, except a portion of the 5,000 yards, about which there was a special arrangement, and it was not bound to assign any reason for refusing to accept the leather. The weakness of defendant's position is that at no time, from the day of default in October up to March 14th, did it ever claim a rescission. It did not make it clear to plaintiff that it had, or intended to rescind.

We are not disposed to hold that defendant was obliged to assign the right reason, or any reason at all, for rescinding, but it was bound to make it clear to plaintiff that it relied upon a rescission of the contracts and, for that reason refused to accept deliveries. 6 R. C. L. p. 932, § 315; *Carney* v. *Newberry,* 24 Ill. 203; *Higby* v. *Whittaker,* 8 Ohio, 201; *Bryant* v. *Isburgh,* 13 Gray (Mass.), 607 (74 Am. Dec. 655, note).

Defendant did not, directly or indirectly, in the correspondence with plaintiff (of which there was much), indicate that it did not further intend to be bound by the contracts.   In all of the correspondence defendant's letters carried with them the inference that it was willing to be bound by the contract but wanted plaintiff to slow down in making deliveries. Defendant, finally, on March 14th, rescinded the contracts by letter, assigning as a reason therefor the depression in business, but making no reference to plaintiff's default in making deliveries.   A failure on defendant's part for upwards of six months after default to rescind these contracts estopped it, as a matter of law, from making that defense.   No error was committed by the trial court by its instruction to the jury that defendant could not rely on this defense.

3. The only remaining question we shall consider is the one of damages.   The trial court instructed the jury that plaintiff was entitled to recover the difference between the contract price and the market value on March 14th of the manufactured leather, which was ready for delivery.   This amounted to upwards of 6,000 yards.   They were further instructed that plaintiff was entitled to recover the difference between the price paid for the cloth, and the price that the cloth was worth on March 14th, and the same rule was applied to the chemicals purchased by plaintiff to manufacture the leather.   No serious objection is

taken to these rules of damage, but defendant's counsel claims some restrictions should have been placed upon the right of recovery under the rule applicable to the unmanufactured materials.

It appeared in the testimony that plaintiff purchased from J. H. Lane & Company of New York, on January 17th, 100,000 yards of cloth at the price of $1.10 per yard, with which to manufacture defendant's order. This contract required monthly deliveries, commencing with July, 1920. It further appeared that only the July delivery was made, and the inference is very strong from the testimony that only one delivery was ever made on the 100,000 yards. The record, at least, shows that about 80,000 yards were not delivered and that J. H. Lane & Company were in default on its contract with plaintiff. It is defendant's counsel's view that, unless J. H. Lane & Company delivered plaintiff yardage to cover the 46,000 yards that defendant refused to take, plaintiff is not entitled to recover from defendant the loss on the undelivered portion. This contention appears to be sound and in conformity with the law of compensation. *Balcom* v. *Tribbett,* 197 Mich. 620. Plaintiff is entitled to be compensated for what it has lost. If J. H. Lane & Company defaulted its contract with plaintiff and delivered to it only half as much as it would require to manufacture the 46,000 yards going to defendant, then plaintiff would not be entitled to collect damages on the other half from defendant, for the very good reason that it did not lose on the undelivered portion. Any other rule would permit plaintiff to speculate on the misfortune of its customers. We are also of the opinion that if plaintiff was able to, and did, use that part of the cloth delivered by J. H. Lane & Company on other jobs, then defendant would not be liable for the loss on it. And, if J. H. Lane & Company were in de-

fault on its contract with plaintiff on March 14, 1921, when defendant canceled its contracts with plaintiff, it was the duty of plaintiff to take advantage of the default in the Lane contract, so as to lessen, as far as possible, the damages which defendant would be called upon to pay.    13 Cyc. p. 72.

Some question is raised that plaintiff ordered the 100,000 yards of cloth nearly a month before the contracts in suit were made.    This does not appear to us as material.    If sufficient of this order was held by plaintiff to manufacture defendant's order, it would not matter the precise time it was purchased, provided it was worth $1.10 per yard when plaintiff received defendant's order.

It is further said that it did not appear that J. H. Lane & Company had been paid for the cloth. This would not be important if plaintiff was obligated to pay for it.    It is the theory that plaintiff was obligated to pay for it that supports the instruction that if plaintiff paid for the cloth or obligated itself to pay for it, it could recover from defendant.    But it is also true that if plaintiff had been relieved of that obligation to pay, in whole or in part, then to the extent it had been relieved it could not recover from defendant.    It is analogous to the rule that where the loss for which an action has been brought has been subsequently repaired, plaintiff is entitled to nominal damages only upon proof that the legal right of the plaintiff had been invaded.    13 Cyc. p. 16, and cases cited.

The proofs, as they stood at the close of the case, showed that not to exceed 20,000 yards of cloth had been delivered to plaintiff on the 100,000-yard order. If this is the true situation, then plaintiff's recovery should be limited to plaintiff's loss on the 20,000 yards.    On a retrial this question should be cleared up and plaintiff's recovery should be limited to what

it has lost.    In view of this error, the judgment must be reversed and a new trial granted.    Defendant will recover its costs.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, SHARPE, and STEERE, JJ., concurred.    MOORE, J., did not sit.