MENOMINEE LUMBER & CEDAR CO. *v.* THOMSON.

CONTRACTS—SALE OF ICE—REQUIREMENTS—CONSTRUCTION—PAROL
EVIDENCE—MERGER OF PREVIOUS NEGOTIATIONS.

In assumpsit on contract whereby defendant railroad company
agreed "to buy such ice as may be required" at a certain
city it was permissible to submit to jury previous corre-
spondence between the parties to show the amount intended by
the word "required," especially where letter transmitting
such contract to plaintiff for signature indicated that de-
fendant did not understand the contract merged into it all
previous negotiations, and the previous correspondence showed
that plaintiff had specifically requested an estimate of daily
requirements in order to harvest sufficient ice to meet defend-
ant's needs.

Appeal from Menominee; Bell (Frank A.), J.
Submitted April 5, 1944. (Docket No. 28, Calendar
No. 42,672.) Decided June 30, 1944.

Assumpsit by Menominee Lumber & Cedar Com-
pany, a corporation, against Charles M. Thomson,
trustee of the property of Chicago & Northwestern
Railway Company, to recover damages for failure to
take ice under contract. Verdict and judgment for
plaintiff. Defendant appeals. Affirmed.

*George Barstow,* for plaintiff.

*Frost & Deo,* for defendant.

REID, J. Plaintiff and appellee filed its decla-
ration July 29, 1943, alleging that defendant and ap-

Merger of previous correspondence in a writing, see 2 Restatement,
Contracts, § 447.

pellant, receiver of the railroad company, entered into a contract by which plaintiff agreed to sell and defendant agreed to buy of plaintiff approximately 7.7 tons of ice per day during the icing season of the year 1942, amounting to substantially 3,000 tons of ice for the year; that the defendant accepted delivery and paid for only 66 tons of ice and declined to receive delivery of over 2,500 tons of ice for which it had contracted. The declaration further sets out the preliminary correspondence between the parties, exhibits A, B, C, D, E, F and G, and contract prepared by the defendant, signed by both parties, dated January 30, 1943, exhibit H. Plaintiff further alleges that exhibit H contained the words, "such ice as may be required at Menominee," which the declaration alleges to be indefinite and ambiguous unless understood in the same sense as the word "require" was used in correspondence, including exhibit C, which is, "We will require approximately 7.7 tons per day." The declaration further alleges that in reliance upon the contract plaintiff harvested and stored for delivery to defendant large quantities of ice for which it would not have use except for the purpose of fulfilling the contract.

The answer alleged that exhibit H was a contract complete in itself, free from ambiguity, and constituted the entire and only arrangement between the parties to this litigation for the sale, purchase and delivery of ice between plaintiff and defendant at Menominee during the period provided in the contract, January 2, 1942, to December 31, 1942.

Exhibit A, dated November 24, 1941, was a request from defendant's general purchasing agent addressed to plaintiff requesting price quotation on ice at Menominee during the season of 1942.

Exhibit B was a letter from plaintiff to defendant dated November 27, 1941, answering exhibit A and containing the words,

"We would appreciate your advising us how many cars you would require filled with ice and the time of filling."

Exhibit C, in reply to exhibit B, was dated January 2, 1942:

"Referring to your letter November 27, file CJS, regarding the number of cars that will require icing and the time of day it will be required.

"We have just received advice from our operating department that we will require approximately 7.7 tons per day. Delivery of this ice will be made at 7 a. m. for train No. 210 and 9:30 a. m. for train No. 214; also between 2 p. m. and 3 p. m. daily for train No. 224. On Sundays, trains Nos. 220 and 244 will require ice around noon time.

"With this information will you kindly quote us price on our ice requirements for 1942."

Exhibit D, dated January 12, 1942, in reply to exhibit C, contained an offer of the prices, and further contained the words,

"The above quotation is for prompt acceptance, as the labor situation is becoming more acute here every week, and we will have to give the filling of our ice house immediate attention."

Exhibit E, from defendant to plaintiff, dated January 17, 1942, contained the words,

"See if you cannot give us a more favorable figure for our 1942 requirements   *   *   *   We are able to purchase this ice at a more favorable figure."

Exhibit F was dated January 21, 1942, from plaintiff to defendant:

"Replying to your letter of the 17th, File 2–60–18, and confirming our telephone conversation of today with you, we will be glad to furnish your ice requirements at Menominee, Michigan, at a reduction

of 50 cents per ton below our quotation dated January 12, 1942.

"This is for prompt acceptance, and we would appreciate it if you could wire us if accepted and contract could come along later, as we are filling now and prefer not to put up any more than our requirements on account of labor conditions at this time."

Exhibit G is dated January 23, 1942, from defendant to plaintiff:

"Referring to yours January 21st, file CJS, wish to advise that in the next day or two we will forward you our ice contract covering requirements for 1942."

Exhibit I, not attached to the declaration but received in evidence on the trial, is a letter dated January 28, 1942, from the defendant to the plaintiff, also signed as accepted by the defendant:

"Enclose for your signature, contract in duplicate, covering our ice requirements at Menominee, Michigan, during 1942. Kindly sign and return the original for my file. Inasmuch as insurance covering public liability will expire as of March 1, 1942, it is understood of course, that same will be renewed at that time, and will be pleased to receive certificate of insurance indicating the insurance is in force for the protection of the railway and agreeing to give 10 days notice of cancellation or modification of said protection."

The important part of exhibit H, apparently inclosed with exhibit I, is:

"Menominee Lumber & Cedar Company, Menominee, Michigan, hereinafter called 'contractor' agrees to sell, and the Chicago & Northwestern Railway Company, hereinafter called 'railway company' agrees to buy such ice as may be required at Menominee, Michigan, during the period January 2, 1942,

to December 31, 1942, under the following terms and conditions:

"Price:
Ice placed in bunkers of air conditioned cars
$3.50 per ton.
Ice placed in box for general use, such as refrigerator cars, water coolers in coaches and road and switch crews, et cetera
$2.50 per ton.

"Delivery:
To be as required by railway company.

"Payment:
Payment to be made by the 20th of each month for all ice delivered during the previous month."

The contract further contained provisions for indemnity from liability for acts in performance of the contract, nothing about insurance, but a waiver as to local, State or Federal laws and liability if the contract were terminated under such laws.

No explanation is offered by either party of the reason for the almost total failure of defendant to accept deliveries of ice. There is a hint on that subject in exhibit E that the defendant could buy ice cheaper elsewhere.

Both plaintiff and defendant cite *Hickey* v. *O'Brien,* 123 Mich. 611 (49 L. R. A. 594, 81 Am. St. Rep. 227), in which John F. Lucas & Company made a contract with Kreutzberger & Crabbe,

"To furnish second parties with all the ice that they may require to carry on their ice business in said city for the period of five years from and after March 1, 1895 at the rate of 75 cents per ton."

On p. 615 the Court said:

"Kreutzberger & Crabbe undertook to take ice of Lucas & Company for the period of five years; that the quantity which they agreed to take was to be measured by the necessities of their business, but

this presupposed that they would have a business for the time agreed.''

In that case the contract was to furnish ''all the ice that they may require to carry on their ice business in said city,'' and the Court did not hold such contract void for uncertainty.

Defendant further cites *F. B. Holmes & Co.* v. *City of Detroit,* 158 Mich. 137, and *Stuart* v. *Home Telephone Company of Detroit,* 161 Mich. 123.

In the instant case plaintiff required of defendant an estimate of the amount of ice to be used by defendant as a necessary step and part of their negotiation and received that estimate in exhibit C as 7.7 tons per day. All the steps that led to the signing of exhibit H were by correspondence and were before the court and jury, except the telephone conversation referred to in exhibit F, which is shown by exhibit F to refer only to a reduction of 50 cents per ton in the proposed price in view of the request of defendant in exhibit E. It cannot be assumed that any of the other matters were waived or progress of negotiations changed by this telephone conversation except to lower the price 50 cents per ton. Plaintiff did not show exhibit H to its attorney before signing it, but does not ask to be relieved from any of its terms and on the contrary brings suit upon it.

It appears from exhibit I, the letter by which exhibit H was submitted to the plaintiff for signature, that exhibit H did not contain all the terms of the contract between the parties because insurance was a further item that was required by defendant to be considered as a part of the contract. It is improbable that the plaintiff actually *intended* to waive the estimate as to the quantity of ice to be furnished. The necessity of harvesting and storage was im-

perative and known to defendant, who also knew that ice not requisitioned would be a total loss to plaintiff. The defendant, the party asserting the rule as to the presumption of merger of previous negotiations into a written instrument, is the very party whose letter submitting the contract for signature shows that he did not so understand the situation and invited the other party to take the same view.

The trial judge was justified in submitting to the jury the previous correspondence to show the amount intended by the word "required."

The charge to the jury gave abundant latitude as to permissible variations by defendant from the estimated requirements. Plaintiff does not complain on that subject and defendant has no cause to complain. Judgment affirmed, with costs to the plaintiff.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSH-NELL, SHARPE, and BOYLES, JJ., concurred.