BALCOM *v.* TRIBBETT.

1. SALES—CONTRACTS—WRITTEN CONTRACTS—EVIDENCE.
   Evidence *held*, to show that the parties to a written contract for the sale of a store business which contained a provision for a formal contract subsequently agreed that the writing embodied their contract and that they proceeded under it.

2. SAME—CONTRACTS—BREACH OF CONTRACT—DAMAGES.
   Evidence *held*, to show that the purchaser breached the contract to the seller's damage.

3. DAMAGES—CONTRACTS—BREACH OF CONTRACT—COMPENSATION.
   The underlying principle of the law of damages, where there is breach of a contract, is compensation.

4. SAME—BREACH OF CONTRACT OF SALE—MEASURE OF DAMAGES—COMPENSATION—RULE.
   While the general rule is that where there is a sale and a refusal to take a stock of merchandise the measure of damages is the difference between the agreed price and the market value at the time of the breach, it does not follow that because a large stock of goods located in a country village cannot be sold in the market there can be no remedy.

5. SAME.

> It does not follow that because damages for the breach of the contract by the purchaser cannot be fixed with reasonable certainty that none can be recovered.

Appeal from St. Joseph; Knowles, J. Submitted April 9, 1917. (Docket No. 92.) Decided September 27, 1917.

Bill by Lyle D. Balcom against Clark W. Tribbett for an accounting. Defendant filed an answer in the nature of a cross-bill claiming damages for breach of contract of sale. From a decree for defendant, plaintiff appeals. Affirmed.

*Jay J. Stanton,* for plaintiff.

*L. F. Humphrey,* for defendant.

MOORE, J. In January, 1914, the plaintiff was in the retail dry goods business at Union City, Mich., and the defendant in the same line of business at Sturgis, Mich. A paper was drawn and signed by them, which reads:.

"This contract, made in duplicate, and entered into this 26th day of January, 1914, by and between Clark Tribbett, of the city of Sturgis, Mich., party of the first part, and Lyle Balcom of Union City, Mich., party of the second part, witnesseth: Whereas, said parties of both parts are desirous of entering into a contract of sale of the business and stock and fixtures of Clark Tribbett situated at No. 118 West Chicago street in the city of Sturgis, Mich.; whereas said party of the second part is in haste; and whereas both parties desire a full and complete contract of sale properly and clearly drawn; and whereas considerable time is necessary to draw same; whereas both said parties desire that a hurried contract of sale be drawn binding them to a further and more complete contract of sale; therefore this contract witnesseth: (1) That both said parties shall as soon as a full and complete contract can be made enter into a full and complete contract of

sale containing, among other things, agreements to the following effect: (2) the stock of goods of said first party are to be sold by him to said second party at the rate of ninety cents on the cost value thereof; (3) the fixtures of said first party are to be sold to said second party for $1,000 (one thousand dollars); (4) the desk and chair of said first party is not included in the fixtures, or stock of goods, and are to remain the property of the first party; (5) that a complete inventory shall be made of said stock and fixtures beginning February 2, 1914; (6) that on completion of said invoice said party of the second part shall pay to said party of the first part five hundred dollars ($500.-00) as the first payment on the purchase price; and the balance of the purchase price above stated shall be paid from the proceeds of the sales of stock to be made between the completion of said invoice and the 1st day of June, 1914, if such proceeds should amount to such balance, and if not then the balance of the purchase price remaining at that time unpaid shall be paid as the parties shall then agree upon; (7) that the said party of the second part is to maintain the expenses of the store, except the insurance, as though he were the complete legal and equitable owner thereof; (8) that the said second party shall pay the insurance policy thereon which was taken out on or about January 15, 1914, and shall pay one-half of the insurance policy taken out in December; and that said second party shall pay the insurance policies which are thereon and which shall after this date expire, and shall renew same at least for the same amount as they are now; (9) that Mr. Tribbett, party of the first part, shall remain in the store as clerk of said second party; that Ethel Tribbett shall remain in store as clerk of second party; that together they shall receive twenty dollars ($20) per week therefor, but that they shall remain only until June 1, 1914, unless said parties hereafter agree otherwise; (10) that the said stock shall remain the property of said first party until fully paid for; that said fixtures and good will shall remain the property of the said first party until fully paid for; (11) that said second party is not to put in his time in the business, except as he sees fit, until June 1, 1914; (12) that said second party may take over said business at

any time prior to June 1, 1914, that he pays for same as above stated; (13) that first party will continue to run said business as though it were entirely his own, devoting his entire time and energy thereto, keeping his customary force of clerks and exercising his same customs and methods; (14) that first party shall send to second party a weekly report of the sales and expenditures; (15) that first party is to pay, as they become due, the invoices contracted prior to February 1, 1914; (16) that the usual clause in restraint of trade shall be inserted in regard to the good will of the business, etc., to the effect that said first party will not engage in the sale of dry goods in the city of Sturgis and vicinity for the period of ten years; (17) that second party is to apply the proceeds of his business at Union City on the purchase price hereof, first paying all invoices heretofore contracted and one invoice of notions to about the extent of $150 to be hereafter contracted.

"C. W. TRIBBETT.
"L. D. BALCOM.
"L. ETHEL TRIBBETT."

It is the claim of defendant that it was later agreed that this contract stated the bargain sufficiently, and that no other contract need be drawn. In any event none other was drawn and the parties proceeded under it. Mr. Balcom made the first payment, as provided in the contract, and later furnished some goods from his stock in Union City. Later differences arose between the parties and this proceeding was commenced for an accounting and to recover for the money paid and the goods furnished. The defendant filed an answer in the nature of a cross-bill in which he avers that plaintiff breached the contract to defendant's damage, and praying, among other things, that his damages might be fixed in the decree. A hearing was had, and in an opinion filed by the trial judge occurs the following:

"The contract of sale executed by the parties recited that it was drafted in haste, and that a more full

and complete contract should be drawn and substituted for it. It further provided that the 16 specific agreements which it set out should be embodied in the new draft. Subsequent to its execution but on the same day, the parties mutually agreed that the contract sufficiently embodied the entire agreement and that the proposed redraft was unnecessary. This agreement waived the provision as to redraft and left the contract (the redraft provisions being eliminated) as embodying every agreement of the parties. No change, addition or modification of such contract was ever made. No agreement, oral or written, was ever made by the parties, making it the duty of defendant to reduce the stock before June 1st by $4,000 or any other amount. In pursuance of the contract, complainant paid down to defendant $500 to apply upon the purchase price—$7,711.58.

"In pursuance of the contract, defendant conducted the business from February 1st to June 1st, in all respects as provided thereby. On June 1st, the maturity of the contract, complainant voluntarily repudiated the contract and made default in the settlement of the unpaid purchase price then payable.

"During the four months in question defendant conducted the store with fidelity and according to the contract. He duly reported and accounted to complainant for all moneys received and disbursed. He repeatedly advised complainant of the necessity for additions of seasonable and necessary merchandise to the stock. Complainant failed to furnish such additions. In consequence trade fell off, the sales diminished materially, and the store suffered in reputation and became known as the 'out' store. Upon complainant's default on June 1st, defendant had on his hands, a depreciated and unbalanced stock, a diminished trade and a store with an impaired reputation. The contract was a title retaining one and contained no provisions in respect to damages, stipulated or otherwise. On June 1st, defendant began to conduct the business upon his own account and has since continued to do so. To rebuild the lost trade and repair the impaired reputation of the store defendant was obliged to and did make additions to the stock to the extent of some $8,000, and was obliged to and did

unusually advertise. In addition to making the payment of $500 complainant also put into the store sundry items of merchandise. He lists these items and they amount in value to $537.99. He also put in a check of $48.63. The sum of these contributions is $1,086.62. Complainant claims (if the court finds him to have been in default and the court does so find) that he is entitled, notwithstanding such default, to recover back the amount of his said contribution, less such legal damages as defendant may have properly proved himself entitled to because of his [complainant's] breach of contract. * * *

"Under the circumstances, I am of opinion that the case is one where in the nature of the case and the subject-matter actual damages are difficult to ascertain and compute by reference to any pecuniary standard. The damages here in my opinion cannot be estimated with certainty, and the only thing to do is to take all the facts and circumstances into consideration and make the most probable estimate which such circumstances will allow. After a careful reading of the record, I am of opinion that defendant should not receive any damages against complainant beyond the amount of money and property the latter has paid in to him. I feel that the complainant should receive nothing from defendant; that the amount which complainant put into the business in money, merchandise, or otherwise (which I have estimated at not to exceed $1,000), whether such amount aggregate $1,086 as claimed by complainant or less, is fair and sufficient amends in the way of damages because of his breach of contract. The defendant is entitled to retain all the property in question, including all stock and fixtures on hand at time of default, and including also all proceeds of sale during the period in question and all moneys put into the business by complainant, including said payment of $500, and all merchandise put into the business by complainant; that complainant be decreed to have no interest therein or claim to or lien upon the same; that upon an accounting nothing is due complainant from defendant, and that complainant is not entitled to recover anything from defendant."

A decree was made following the opinion. The case is brought here by appeal.

It is insisted by plaintiff that there was never a completed contract of sale, and that he should be entitled to the relief for which he prayed. After an examination of the record we agree with the trial judge that the parties agreed that the writing embodied their contract, and that they proceeded under it. We also agree with him that the plaintiff breached the contract to the damage of defendant.

Plaintiff makes the further claim that if a contract was made which has been breached, that the decree cannot be justified. We quote from the brief:

"The rule for such damages, as I understand it and as I get from the authorities, is as follows: Where both parties are at fault, no damages can be recovered. *Cleary* v. *Folger*, 84 Cal. 316 (24 Pac. 280, 18 Am. St. Rep. 187). If there is a breach on the part of one of the contracting parties, the measure of damages would be the difference between the agreed price to be paid for the goods and its market value at the time of the breach. *Stewart* v. *McLaughlin's Estate*, 126 Mich. page 1 (85 N. W. 266, 87 N. W. 218), and rehearing of the same, beginning on page 6; *Allen* v. *Mohn*, 86 Mich. 328 (49 N. W. 52, 24 Am. St. Rep. 126); 29 Am. & Eng. Enc. Law (2d Ed.), p. 719. There is no testimony showing the market value of these goods. An offer on the part of some person for a stock of goods does not fix a market value. The market value is the price at which similar property is bought and sold in the market. *Boston Belting Co.* v. *City of Boston*, 183 Mass. 254 (67 N. E. 428, 430). The question is what are the goods really worth upon the market. *Brownlee* v. *Bolton*, 44 Mich. 218, 220 (6 N. W. 657); *Dana* v. *Fiedler*, 12 N. Y. 40 (62 Am. Dec. 133)."

It may be said as to this claim that the record does not show that both parties were at fault, and therefore that no damages can be recovered. While the general rule is undoubtedly that where there is a sale

and a refusal to take the goods the measure of damages is the difference between the agreed price and the market value at the time of the breach, it does not follow that because a large stock of goods located in a country village cannot be sold in the market, there can be no remedy. It has been said:

"The object of the law in awarding damages for the violation of a contract is to place the party injured pecuniarily in the same condition he would have been in had the contract been kept and performed. * * *

"The law of damages is not comprised in a set of arbitrary rules. The underlying principle is that where a contract has been broken compensation must be made." 3 Sutherland on Damages (3d Ed.), p. 1865.

In the instant case we have the sale of a stock of goods made in January, which were left in the hands of defendant in June, a depleted, unseasonable stock. It does not follow that because damages cannot be fixed to a mathematical certainty that none can be recovered. Without considering the evidence in detail we think it may be said that the record abundantly justifies the decree.

It is affirmed, with costs to defendant.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.