TOWNSHIP SCHOOL DISTRICT OF WAKEFIELD *v.* MACRAE.

1. EVIDENCE—ADMISSIBILITY—CONTRACTS—ALTERATIONS.

In an action by a school district on a sewer tunnel con-
tractor's bond to recover damages for failure to com-
plete the tunnel through a hill, evidence of one who, with
the engineer of plaintiff, examined the ground where the
proposed tunnel was to be constructed before the contract
was signed and was shown where the end was to be, and
that, as constructed, it came out at a point some distance
further away so as to make the tunnel longer, was inad-
missible to show that the course of the tunnel was altered
after the execution of the contract, where it appeared
that such circumstance did not occur in the presence of
the contractor, and he knew nothing of it when he signed
the contract, and the engineer might have been mistaken
or some other event might have transpired.

2. TRIAL—INSTRUCTIONS—STRIKING OUT TESTIMONY.

It is error to give an instruction, the only basis for which
is stricken testimony.

3. CONTRACTS—MISTAKE OF ENGINEER—BREACH OF CONTRACT.

The act of an engineer in starting a tunnel contractor's foreman at what he erroneously believes is the correct point, necessitating the construction of a longer tunnel than that covered by the contract, does not constitute a breach of the contract.

4. SAME—BREACH—FAILURE TO PERFORM—RESCISSION.

The mere fact that there is a controversy between a tunnel contractor and a school board and its engineer as to whether certain work should be done is no excuse for the failure of the contractor to go ahead and complete the work under the terms of the contract at a certain rate per foot as claimed by him where such work would merely mean an extension of the tunnel.

5. SAME—CONSTRUCTION—DUTY OF COURT.

It is the duty of the trial court to construe a written contract.

6. SAME—"MORE OR LESS"—QUESTION OF LAW.

The term "more or less" as used in a tunnel construction contract in referring to the number of feet the tunnel is to be driven, is an expression which shows that the parties are to run the risk of gain or loss, as there might happen to be an excess or deficiency in the estimated quantity.

7. SAME—CONSTRUCTION—BREACH—RESCISSION.

Where the facts are not in dispute it is for the court to determine what is a substantial compliance with a construction contract.

Error to Gogebic; Collingwood, J., presiding. Submitted June 26, 1917. (Docket No. 65.) Decided December 27, 1917.

Assumpsit by the township school district of the township of Wakefield against Albert D. MacRae and another for the noncompletion of a sewer contract. Judgment for defendant MacRae. Plaintiff brings error. Reversed.

*William S. Baird* and *Herbert M. Norris,* for appellant.

*James A. O'Neill,* for appellees.

STONE, J. The plaintiff is a township school district embracing the township of Wakefield, in Gogebic county. It is the claim of plaintiff that it is now governed by Act No. 117 of the Public Acts of 1909 (2 Comp. Laws 1915, § 5909 *et seq.*). The said township, and therefore the plaintiff school district, embraces a large territory consisting of several geographic townships, and includes the village of Wakefield, which is located upon the south and east sides of Sunday Lake.

In August, 1914, there were in this school district ten schoolhouses, four of which were located within the village of Wakefield and three of these being then in actual use for school purposes. The said village had no sewer system, and the sewage from these last-named schoolhouses was being emptied through pipes into Sunday Lake. This was finally forbidden by the authorities of the village; whereupon the board of education of plaintiff took up the subject of the construction of a sewer system to take care of the sewage from its schoolhouses, and particularly those then emptying their sewage into said lake. At a meeting of said board held on July 28, 1914, it voted to construct a sewer. J. M. Goldsworthy was engaged as engineer for the sewer work at a commission of 2 per cent. of net cost. He laid out the sewer through the village of Wakefield, around the east end of Sunday Lake to the north side thereof, where it was to empty into a tunnel to be driven through the hill on the north side of the lake, where said tunnel would open into a deep ravine, and a proper fall could be obtained. This tunnel was also to extend back from a point where the sewer emptied into it, to Sunday Lake, so as to afford an opportunity for lowering the lake in case of high water. A shaft was to be sunk at the place where this sewer would discharge into the tunnel. The board of education determined to let the

contract for driving the tunnel separate from the other sewer work, and accordingly, on August 21, 1914, advertised for bids for constructing this tunnel, bids to be received for both an 8x8 tunnel and an 8x10 tunnel. The notice, among other things, stated that:

"For further information inquire of E. R. Hillis, Secy., or Ed. Niehold, Pres."

These bids were received on August 29, 1914, at which time the board of education met and considered the bids received. At this meeting it was determined to construct the tunnel 8x10 feet in size, and, the bid of defendant MacRae being the lowest, he was awarded the contract at the price of $9.95 per linear foot. Prior to the advertising for bids the engineer had prepared and filed with the secretary of the board of education plans and profiles for the construction of this tunnel. A written contract was forwarded to said defendant to be signed. Inclosed with this contract was a copy of the profile of the proposed tunnel that was on file with the secretary at the time the bids were called for, which showed the tunnel that was to be constructed to be approximately 1,200 feet in length.

Under date of September 8, 1914, a written contract was entered into between the board of education of the plaintiff and defendant MacRae for the construction of this tunnel, it being described in the said contract as follows:

"To excavate, dig, and construct a tunnel approximately twelve hundred (1,200) feet in length, more or less, through the hill north of Sunday Lake, in the township of Wakefield, in Gogebic county, Michigan, at the place shown by the plans and profiles therefor, now on file in the office of the secretary of said board of education. Said party of the first part shall excavate, dig, and construct said tunnel in accordance with the plans, profiles, and specifications therefor now on file in the office of the secretary of said board of edu-

cation, which said plans and profiles are hereby expressly made a part of this contract, and a copy of which said specifications are hereto attached, marked Exhibit 'A,' and made a part thereof."

A copy of the specifications was attached to the contract. The specifications stated:

"Total length of tunnel 1,200 linear feet, more or less."

The contract further provided that the work should begin thereunder within ten days and should be completed within a period of not to exceed eight months from the date of the contract. It also provided for a bonus of $10 per day to be paid to Mr. MacRae for each day remaining between the date of the completion of the work and the expiration of said limit of eight months, and also for a penalty of a like amount for each day said work should remain incompleted after the expiration of said time limit. The contract also provided for the furnishing by defendant MacRae of a bond of $11,940 for the faithful performance of said contract, and also a bond in a like amount for the payment of all material and labor claims.

In accordance with said contract, defendant MacRae caused to be executed by himself, as principal, and by the defendant Ætna Accident & Liability Company, as surety, a bond for the faithful performance of said contract in the amount above named. The bond provided that no change should be made in the plans, specifications, terms, covenants, and conditions of such contract which should increase the amount to be paid the principal more than 20 per cent. of the penalty of the instrument, without the written consent of the surety.

Defendant MacRae started work upon the tunnel under said contract about September 15, 1914, when Mr. Goldsworthy, the engineer, gave Mr. Solberg, who

was foreman for Mr. MacRae, the location for starting the work on the north side of the hill. It was necessary to sink a shaft at the point where the sewer was to open into this tunnel in order to get a starting point for this tunnel work on the south side of the hill. A considerable part of the work of sinking this shaft was done by defendant MacRae under separate agreement, and was paid for by the plaintiff. Defendant MacRae also began excavation of the tunnel from this shaft as soon as it was sunk to the necessary depth, and work was proceeded with from both ends towards the center of the hill.

Defendant MacRae continued his work from about September 15, 1914, until the night of March 13, 1915. Estimates of the work done were furnished at regular intervals by the said engineer in charge, and payments were made by the plaintiff to the said defendant of 80 per cent. of the contract price for work done, 20 per cent. being retained pending completion of the work in accordance with the terms of the contract. These estimates and the school warrants and payment thereof are all shown in the record. A large part of the last estimate was paid to a justice of the peace to satisfy garnishee judgments against defendant MacRae. The defendant MacRae never did any work on this tunnel after said 13th day of March. Due notice was given the Ætna Accident & Liability Company, as surety, of the discontinuance of the work, and on May 13, 1915, being five days after the expiration of the time for completing the work under the contract, the secretary of the board of education sent, by registered mail, an official notice to both the defendants that the work of constructing this tunnel had not been completed, that a default had occurred on the part of defendant MacRae, and that there still remained a considerable amount of work to be done, for which said plaintiff would hold said defendants responsible.

The defendant the Ætna Company acknowledged receipt of this notice, and under date of June 1, 1915, Mr. Niemeyer, manager for said company, notified the president of the board of education that the surety upon the bond did not intend to proceed, or procure others to proceed, with the performance of the contract. Thereupon the plaintiff proceeded to advertise for bids for completing the tunnel, and at a meeting held on June 15, 1915, the board of education received bids and let the contract for completing the tunnel to W. S. Peters, the lowest bidder, for $21.25 per linear foot, together with additional compensation of $1,200 for finishing that portion of the work which was only partially completed by MacRae. In accordance with these proceedings a contract was entered into with Mr. Peters, and the work of finishing the tunnel was thereafter completed under this contract, and payment made to Mr. Peters therefor.

This suit was begun October 30, 1915. It was originally claimed by the plaintiff that the contract in question embraced that portion of the tunnel leading back from the shaft above mentioned to Sunday Lake, while defendant MacRae denied that this was included in his contract. Upon the trial of the case the plaintiff withdrew this portion of its claim, and asked for damages for failure to construct the tunnel from the shaft to the northern outlet only. The plaintiff also withdrew its claim for a penalty of $10 per day for all time after May 8, 1915, during which the tunnel was incompleted.

The total length of the tunnel as finally completed from the shaft to the outlet on the north side of the hill is 1,356 feet. Of this distance defendant MacRae either fully or partially completed 796 feet, leaving 560 linear feet in the center of the hill untouched.

It was the claim of the plaintiff that a considerable part of the work done by defendant MacRae was not

of the proper size, in that the tunnel was not high enough. It was estimated and testified to by the engineer in charge that the amount to be excavated under this partially finished portion amounted altogether to the equivalent of 54 linear feet of tunnel, which amount was deducted in the estimates of the engineer. As stated, defendant MacRae was paid for the work done by him, less 20 per cent. which was retained according to the terms of the contract pending the completion thereof. The total amount of such payments, as shown by the record, was $5,794.88, and the amount retained was $1,448.72, and a small balance left after paying the garnishee judgments.

The plaintiff claimed a net damage, after crediting the 20 per cent. and other item, of $5,493.38. In addition to this, plaintiff claimed damages for extra expense in constructing the balance of its sewer system on account of water accumulating therein and delaying the work, and making it more expensive, and also causing plaintiff to be put to great expense in removing this water, on account of failure to finish the tunnel in accordance with the contract, and thus afford an outlet for such sewer system.

The court refused to allow plaintiff to introduce testimony upon the point last above mentioned, upon which ruling error is assigned.

The defendant MacRae, by his notice under his plea, claims in defense of this action, among other things, that he was prevented from performing his contract with plaintiff, in that, after the making and execution of said contract, and without the knowledge and consent of said defendant, the plaintiff wrongfully, fraudulently, and with intent to deceive said defendant, so altered the position, lines, direction, and location of said tunnel as to increase the length thereof and the time necessary for its completion, and sought to require him to construct such tunnel in such changed

position and direction; also that the engineer employed by said plaintiff to direct said work, with the knowledge and consent and at the direction of the plaintiff, at the inception and during the progress of said work, fraudulently and with intent to deceive this defendant established false and incorrect lines, and gave false directions for the construction of said tunnel, and sought to, and did, by such deception and misrepresentations, induce and require this defendant to construct said tunnel on said false and incorrect lines, to his great damage, and in violation of the terms of said contract; also that said plaintiff and its engineer in charge of said work wrongfully, fraudulently, and in violation of the terms of said contract sought to compel and require said defendant to do and perform additional work, digging, and tunneling at great cost and expense and time to this defendant, which said work was not included in said contract, and fraudulently and wrongfully sought and attempted to require, and did require, the performance of such additional work as a condition precedent to the acceptance of said work included in the contract, and of the payment of the moneys due and to become due the said defendant thereunder; that on account of said fraudulent acts and said breach of contract on the part of said plaintiff said defendant MacRae was relieved from said performance, and was entitled to receive a reasonable value for the work done, notwithstanding the terms of said contract, and he also gave notice of set-off.

The defendant the Ætna Company gave notice of substantially the same defense, except as to set-off.

The trial resulted in a verdict and judgment against the plaintiff and in favor of the defendant MacRae in the sum of $11,319.02.

Upon the trial of the case much evidence was offered by both parties and received upon the issue as thus

made. The defendant called as a witness one James W. Oxnam, who was permitted to testify, over the objection and exception of plaintiff's counsel, that a few days before the letting of the contract for the construction of this tunnel, and after bids had been called for, he visited and examined the ground through which the tunnel would extend in company with Mr. Goldsworthy, the engineer, and that at that time Mr. Goldsworthy took the witness and his companions around to the north side of the hill and showed him where the north end of the tunnel was to be, and that after the tunnel had been started, and after defendant MacRae had quit work, the witness went back and examined the premises, and found that the tunnel as actually constructed did not come out at the place where Mr. Goldsworthy told him it would come out, but that it came out between 200 and 300 feet northeast from that place, and that the effect was that the tunnel was longer.

At the close of the testimony the plaintiff requested the court to charge the jury as follows:

"(2) I charge you that under the terms of that contract the defendant MacRae was obliged to build a tunnel through the hill north of Sunday Lake, 8 feet by 10 feet in size, for the distance of 1,200 feet, more or less, and that the words 'more or less,' as used in this contract, mean the number of linear feet of tunnel that the plaintiff might require for its necessities as an outlet for its sewer system, and that the difference between 1,200 feet and 1,356 feet, the distance that the tunnel actually was constructed, was a reasonable distance for the plaintiff to extend its work over 1,200 feet, and that the extension of the tunnel that distance by the plaintiff was not sufficient to constitute a breach of the contract on the part of the plaintiff, and that such extension alone on the part of the plaintiff would furnish no excuse or justification for the defendant MacRae quitting his work or abandoning his contract.

"(10) In this case it appears from the evidence

that defendant MacRae contracted to construct a tunnel approximately 1,200 feet in length, more or less. It further appears that this tunnel when fully completed was somewhat longer than 1,200 feet, the evidence on the part of the plaintiff showing it to be 1,356 feet long, and the evidence on the part of the defendants showing it to be —— feet in length.  In this connection I charge you that it was the distinct understanding of the parties, by the use of the words 'more or less' in the contract, that the agreement in regard to the length of the tunnel in question should not fix the precise number of feet the tunnel should be constructed, and that the intent was that some deviation from a length of 1,200 feet should be allowed.  The actual length of this tunnel, according to the evidence of either plaintiff or that of the defendants, is well within the limits to which such deviation might properly extend.

"(13) I further charge you that any change in the contract of plaintiff with defendant MacRae made after the execution thereof and by mutual consent, and any such change in the plans, specifications, terms, or conditions for performing any work under such contract, which did not increase the amount to be paid said defendant MacRae more than 20 per cent. of the penalty of the bond furnished, would not vitiate said contract or release the surety upon said bond.

"(15) I further charge you that, if you find the course of such tunnel was changed, after the execution of the contract and bond in evidence in this case, with the consent of the defendant MacRae, and such change did not increase the amount to be paid MacRae more than 20 per cent. of the amount of the penalty of the bond given, then both the defendants are liable to the plaintiff for all damages arising from the failure of defendant MacRae to complete his said contract."

All of which requests to charge were refused.

The court charged the jury, among other things, in the following language:

"In this case the contract says, or the contractor MacRae agreed, 'to construct a tunnel for a distance of approximately 1,200 feet, more or less, through the

hill just north of Sunday Lake, in said township.' As a matter of fact, it is admitted that the tunnel as laid out and as finally constructed along the lines on which Mr. MacRae was constructing it while he was at work was 1,356 feet long, and the defendant MacRae tells you that he did not know that the tunnel was to be of that length, that he deemed it to be 1,200 feet, and when he found that the tunnel was to be 1,356 feet long, he abandoned it, and his claim is that the tunnel for which he contracted was to be 1,200 feet long, and that somehow after the contract was let the course of that tunnel was so changed that it increased the length of the tunnel 156 feet.

"(7) Now, gentlemen, one of the questions for you to determine under the evidence in this case is: Was that tunnel changed? If it was not changed, and if Mr. MacRae contracted to build the tunnel which afterwards proved to be 1,356 feet long, and you find under this contract that 'approximately 1,200 feet, more or less,' would describe and define such a tunnel, then Mr. MacRae has no defense, and you would find for the plaintiff. If you find that Mr. MacRae was induced to take a contract to dig a tunnel 1,200 feet long, and that 'approximately 1,200 feet, more or less,' means 1,200 feet, and no more and no less, and that the tunnel as constructed was required to be 1,356 feet long, then you come to the question as to why he abandoned the contract. But in the first place, gentlemen, you have to determine under the evidence in this case and from your experience as men of affairs whether a contract which states 'approximately 1,200 feet, more or less,' could be a binding contract for a tunnel which was 1,356 feet long.

"(8) So you see there are two questions that you must determine before you come to the third and final question, which I shall give to you. As I say, the first question is: Did the contract as signed by Mr. MacRae cover a tunnel which proved to be 1,356 feet long? And the next question is: Was the course of that tunnel changed after the contract was let, and was it done fraudulently and wrongfully, and was it such a material change that the defendant was justified in annulling and throwing up the contract?

"(9) After answering those questions to your satis-

faction, if you find that the change was made, and it was such a material change as would justify a contractor in throwing up the contract, or if you find that the term in this contract 'approximately 1,200 feet, more or less,' would not cover a tunnel which was 1,356 feet long, then you come to the third question, and really the most important question of all: Did Mr. MacRae abandon the contract because of that fact? I mean: Did Mr. MacRae abandon the contract because the course was fraudulently changed? If you find that the course was fraudulently changed, and you find that Mr. MacRae had reason to abandon it, that it was such a change that it would affect the contract in such a way that he had a right to abandon it, and that he actually did abandon it for that reason, then you would consider the damages to the defendant, and the measure of damages in that case would be what the work which he performed, the nearly 800 feet, was actually worth, less what was paid to him. You have those figures. It is not necessary for me to repeat them."

There was a motion by plaintiff for a new trial, based on the refusal of the court to give plaintiff's requests to charge, and on the charge of the court as above indicated, and that the verdict was against the great weight of the evidence, and was grossly excessive and unreasonable. The motion for a new trial was denied, and exceptions duly taken. The plaintiff has brought error, and the questions discussed are properly raised by appropriate assignments of error.

There are many assignments of error relating to the admission of testimony. We have, after careful examination, reached the conclusion that none of the rulings of the court relating to the reception of testimony amounted to prejudicial error, except that part relating to the testimony of the witness Oxnam. The circumstance testified to by Oxnam took place many days before the contract was signed. It was offered as tending to show that the course of the tunnel was

changed after the execution of the contract. It did not tend to show that. The circumstance did not occur in the presence of defendant MacRae, nor did he have any knowledge of it when he signed the contract. The trial court at first stated an excellent reason for ruling this testimony out when it at first refused to receive it:

"It doesn't show the change from the defendant's course. Mr. Goldsworthy might have been mistaken that day, or some other event might have transpired."

The court erred in later receiving this testimony, and doubtless its effect was damaging to the plaintiff.

We are also of the opinion that the trial court erred in charging the jury in the language above quoted from the charge. Some testimony had been received upon the trial relating to the meaning, or construction that should be given to the words "more or less." The trial court finally struck out that testimony, so that there was no evidence before the jury as to the meaning of the term "1,200 feet, more or less," and yet the court submitted to the jury the question whether a contract which states approximately "1,200 feet, more or less," could be a binding contract for the tunnel, which was 1,356 feet long.

The undisputed evidence shows that the defendant MacRae never went to the northern terminus of the tunnel to make any examination until after work had begun. He claims that he and Mr. Hillis, the secretary of the board, examined the south end of the tunnel, and went a short distance up the hill, and had a conversation as to the general course of the tunnel. It does appear that the engineer, Mr. Goldsworthy, placed defendant MacRae's foreman at work at the north terminus of the tunnel, and that the work proceeded from that point without any complaint on the part of the defendant MacRae. The object and pur-

pose of the tunnel is clearly expressed in the contract, and there can be no doubt that the purpose was to dig and construct a tunnel through the hill north of Sunday Lake for the purpose named.   There is evidence in the case that one could not tell by an inspection of the plans, profiles, and specifications the exact location on the ground of the tunnel, without actual measurement.   If Mr. Goldsworthy, in good faith, started the defendant's foreman at work at a given place, and it turned out that by reason of the beginning of work at such place the tunnel was 1,356 feet long instead of 1,200 feet, this fact alone would not constitute a breach of the contract, if done, as we say, in good faith on the part of the engineer, he believing as he testifies, that that was the correct point.   There is a good deal of conflict in the evidence in the case upon this subject.   It is the claim of the engineer that the location never was changed from the first, and in this he is contradicted by the defendant MacRae.   If, however, on the other hand, it should turn out that because of the cheapness or low price of the contract per foot the engineer, thinking he would lengthen and change the tunnel, acted fraudulently and dishonestly in the matter, and insisted that this was the starting point and course that should be pursued in the construction of the tunnel, then it might be reasonably said that there was a breach of the contract.

There seems to have been some controversy between the defendant MacRae and the school board and the engineer whether MacRae's contract extended south from the shaft to the lake, the defendant MacRae insisting all the time that this was not a part of his contract, the others asserting that it was.   This did not prevent defendant MacRae from proceeding to finish his work in accordance with the terms of the contract.   We have looked in vain in this record for any evidence that the plaintiff ever forbade or prohibited

the defendant MacRae from proceeding to finish his job in accordance with the contract. There is considerable force in the claim of plaintiff's counsel that defendant MacRae was looking for an opportunity to throw up this job because of the low bid which he made.

We are of the opinion that the trial court should have construed the words "approximately 1,200 feet in length, more or less, through the hill north of Sunday Lake," and should have instructed the jury that, if the engineer in good faith pointed out as the correct place for the northern terminus of the tunnel, the place where said defendant's foreman commenced work, and said work was commenced there without objection on the part of said defendant's foreman, that fact would not vitiate the contract, or justify the said defendant in abandoning it, even if it turned out that the length of such tunnel was thereby made 1,356 feet, instead of 1,200 feet. It should not have been left to the jury to say that this was such a material change that the said defendant would be justified in annulling and throwing up the contract, even if it was a change in the terminus of the tunnel, if made in good faith by the engineer, and acquiesced in by the representative of said defendant. It was the duty of the court to interpret the written contract. The terms "approximately" and "more or less," as contained in this contract, have certain well-settled legal meanings. The term "more or less," as used in such contracts, is held to be an expression which shows that the parties were to run the risk of gain or loss, as there might happen to be an excess or deficiency in the estimated quantity. 27 Cyc. p. 913; *Holland* v. *Rea*, 48 Mich. 218 (12 N. W. 167) ; *F. B. Holmes & Co.* v. *City of Detroit*, 158 Mich. 137, 141 (122 N. W. 506) ; *Cabot* v. *Winsor*, 1 Allen (Mass.), 546; *Brawley* v. *United States*, 96 U. S. 168.

In *F. B. Holmes & Co.* v. *City of Detroit, supra,* this court said:

"We find no difficulty in ascertaining the prime object and purpose of these parties as expressed in the writings considered. They had in mind so many barrels of cement as the operations of this department would require during this period. * * * The clause '5,000 barrels of Portland cement, more or less,' was the expression of an estimate subject to the controlling object of the agreement expressed in the words of the contract, 'all the Portland cement that may be required by the city of Detroit and ordered by the department of public works,' the last clause expressing the method required to secure the delivery of the property to defendant."

See cases there cited.

In *Cabot* v. *Winsor, supra,* it was held that the words "more or less" in a broker's note for the sale of goods as follows: "Sold to N. W. for account of S. C. five hundred bundles, more or less, gunny bags"—do not create a latent ambiguity, or authorize the introduction of parol evidence by the purchaser to show an understanding between the parties that he was to have either more or less than the number specified, as might reasonably be found necessary to fill a ship, although it appeared that both parties knew at the time of the purchase that the goods were bought for the purpose of filling a ship, and that it was uncertain what number would be necessary. And if the facts are not in dispute, it is for the court to determine what is a substantial compliance with the contract.

In our opinion, it was error for the court to submit to the jury as a fact the question:

"Did the contract as signed by Mr. MacRae cover a tunnel which proved to be 1,356 feet long?"

The case was a close one upon the facts, but we think there was a case for the jury. We think that plaintiff's 2d, 10th, 13th, and 15th requests

to charge should have been granted, and that there was reversible error in the charge as given.

We have examined the other assignments of error, but find no reversible error except as above pointed out.

The judgment of the circuit court is reversed, and a new trial granted, with costs to the appellant.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.