SELKIRK *v.* WINFIELD.

APPEAL AND ERROR—TRIAL—WARRANTY—WRITTEN CONTRACT—
SUBMISSION OF QUESTION TO JURY.

> In an action for the purchase price of certain cows, where
> defendant claimed damages by way of recoupment for the
> breach of a claimed warranty, said warranty consisting
> of the written statements of plaintiff in a letter to de-
> fendant that "in good condition I believe that they will
> weigh about 1,200 pounds," and "the cattle are all right
> in every way," and the trial judge, against plaintiff's con-
> tention that said writing was for the court to construe,
> submitted to the jury, under instructions favorable to de-
> fendant's contention, the question as to whether said state-
> ments amounted to a warranty, *held,* that, if any one has.
> occasion to complain, it is not defendant.

Error to Clinton; Moinet (Edward J.), J.   Sub-
mitted April 20, 1921.   (Docket No. 116.)   Decided
June 6, 1921.

Assumpsit by Ralph W. Selkirk against William H.
Winfield for the price of certain cows.   Judgment for
plaintiff.   Defendant brings error.   Affirmed.

*Smith & Hunter,* for appellant.

*Searl & Searl,* for appellee.

MOORE, J.   Plaintiff is a resident of Montana.   He
sold to defendant, a resident of Clinton county, Mich-
igan, 50 head of cows at $75 per head, f. o. b. Colum-
bus, Montana.   The plaintiff sued defendant and re-
covered a judgment.   The case is brought here by
writ of error.

The case calls for the construction of a letter and
a telegram.   The letter reads:

"Heart Bar L Ranch,
Fishtail, Montana,
January 1, 1920.

"Mr. W. H. WINFIELD,
"Shepardsville, Mich.

"*Dear Mr. Winfield:* The cows which we advertised are high-grade, four-year-old, dehorned Herefords, bred to registered bulls for spring calves. Due to a bad summer and a very early and severe winter, we think it well to cut down somewhat in the number of cattle that we will run, and so offer these two cars. The cattle are all right in every way, and are sold through no fault. They are thin now, but not poor, and can be shipped anywhere with safety. In good condition I believe that they will weigh about 1,200 pounds. These cows are of unusual quality and breeding, as they are the same breeding and brand that raised the grand champion carload of fat steers at the 1918 International. We are asking $75.00 per head for these cows f. o. b. Columbus, Montana, which is our railroad station on the Northern Pacific R. R. Considering the quality and breeding, and the fact that they should double their number in a few months, we consider the price very reasonable.

"Yours truly,
"RALPH W. SELKIRK."

The telegram reads:

"Shepardsville, Mich. 15.——

"To Ralph Selkirk,
"Columbus, Montana.

"Order cars. If you have to use common stock cars, pad cracks up and bed good. Am trying to get cattle insured while in transit. Can't. Will wire fifty dollars tomorrow night. Draw on me through Bank of Ida here. Billing will follow. Do not load heavy.

"W. H. WINFIELD."

Because of the claim of appellant which will be stated more at length later, we think it desirable to quote portions of the charge to the jury as follows:

"The defendant claims that the cattle which he received were not the kind of cattle which he expected

that he was buying; and he claims further that in that letter the plaintiff in this case represented to him, or made some statements which he relied upon, and warranted to him, that the cattle would be of certain size, or within certain size, within reasonable range. No particular number, nor no particular weight, but they should be reasonably within certain weights; and he claims when they arrived they were not of that weight; and he also claims that at the time they were loaded on the cars at Columbus, Montana, they were not of that weight; and he claims that by reason of that, and this warranty, which he claims this letter contains, he has suffered damages as the evidence here shows. That is practically the issue, boiled down, in this case, as I will point out to you later on.   *   *   *

"The defendant claims that he is entitled to recoup damages growing out of this same contract, whatever you gentlemen would find his damages to be. And if you find that he has suffered some damages under the rule I will give you—you could set off those damages. *   *   *

"Now in the first place, gentlemen of the jury, as I understand it, there is no issue made upon the question of the physical condition of these cattle.   *   *   * Defendant makes no claim as to the health of the cattle, or as to the breeding; but the only issue is as to the size; and he claims that in this letter there was a warranty that these cattle were to be of a certain weight. Now the only thing in this case upon which the warranty can rest is this letter; and the court holds that the statements made that the cows advertised are 'high grade four-year-old dehorned Herefords, bred of registered bulls for spring calves,' is merely a representation as to the breeding. There is no issue upon the condition of the weather there and the bad summer as a reason why they should sell. There is a statement that 'the cattle are all right in every way and are sold through no fault. They are thin, but not poor, and can be shipped anywhere with safety. In good condition, I believe that they will weigh about 1,200 pounds.' I will refer to this statement a moment later. 'These cows are of unusual quality and breeding.' The court holds that that is merely, if anything, a representation—or, if it would be a warranty, it would be a

warranty as to the quality and breeding of the cattle; not as to size.

"Now before you can hold the plaintiff liable upon a warranty, the burden is upon the defendant here to show that the statements made in that letter are positive statements, an affirmation of fact, not of opinion, as to the quality and condition of the cattle sold, made by the seller, and that they were in the course of negotiations, and naturally and fairly importing that the plaintiff intended to bind himself to the truth of them, and that they were understood and relied upon by the defendant here, the buyer; and that this induced him to buy. You must find those facts before you can find these statements in this letter to constitute a warranty.

"Now the statements 'in good condition I believe that they will weigh about 1,200 pounds,' in and of itself is a mere expression of opinion, and that plaintiff would not be liable upon that alone. That is merely his opinion. And if you find that he honestly and fairly, intending to tell the truth, expressed that opinion, he could not be held liable in this case upon that question of weight. But the only question I submit to you is this: Were the statements made that 'the cattle are all right in every way,'—does that constitute a warranty upon the question of the weight of these cattle? * * * Was it fairly within the contemplation of both of these parties, and not one of them—was it fairly within the contemplation of both of these parties, and did the plaintiff here intend to warrant when he said that the cattle are all right in every way, did he intend to warrant—taken in connection with the other statements that those cattle at that time could later on be in condition so that they would weigh that much? Now, unless you are able to find that to be the fact, the defendant here would not be entitled to recover any damages by way of recoupment in set-off against the claim of the plaintiff. So that is the question for you to determine. Was there a warranty made? Was it within the contemplation of both of these parties —not at Shepardsville when the cattle were unloaded— but was there a warranty made and was it untrue at the time these cows were placed upon board of the train in Montana? That was the place of delivery.

Under this contract, delivery in Montana f. o. b. Columbus, was delivery to defendant in this case. It narrows down to a very narrow issue in this case, gentlemen, under this letter. What was the contemplation of the parties at the time this stock was purchased? Was there a warranty made, under the rules I have given you? And does that warranty apply to size and weight of the cattle or does it apply to something else?

"If you find, and the defendant has satisfied you by a fair preponderance of the evidence, that that was a warranty, and that it had reference to the weight of the cattle, and that by reason of it—that it is not true —and that by reason of that he has suffered damages, then you will take up the question of damages. If you find that it is not such a warranty, then he would not be entitled to recover any damages whatever in set-off against the claim of the plaintiff.     *     *     *

"Now if you find that the defendant has established the fact that there was a warranty, and that it was fairly within the contemplation of the parties that that warranty was a warranty as to the weight of these cattle in Montana, and that there has been a breach of that warranty, then you will take up the question of what damages has the defendant suffered by reason of the breach of that warranty, if you find that there was such a warranty. And the measure of damages would be what would be the difference in value of these cattle from what they were and what they would have been if they had been as warranted or represented by the plaintiff. If you find that the defendant has suffered some damage, whatever that damage is, then you will take that amount and deduct it from the amount which the plaintiff is entitled to recover, or from the established claim of the plaintiff, and deduct that amount from the plaintiff's claim, and your verdict would be, We find for the plaintiff and assess his damages at so much."

Counsel say:

"The defendant makes no claim regarding the representations in the letter of January 1, 1920, so far as the representations relate to the grade, age or breeding

of the cattle. The defendant insists that the letter of January 1, 1920, consists of statements of material facts furnished the defendant in response to the specific inquiry contained in his letter of December 20, 1919. Defendant had no opportunity for inspecting the cattle in question, but was obliged to rely upon statements made to him by the plaintiff in answer to his letter of inquiry. * * *

"The trial court in instructing the jury, limited the deliberations of the jury to the clause, 'the cattle are all right in every way,' contained in the letter of January 1, 1920, and expressly withheld from the jury the statement 'in good condition I believe they will weigh 1,200 pounds,' characterizing the last quoted statement as a mere expression of opinion and instructed the jury that plaintiff would not be liable upon this statement alone. It is submitted that the trial court erred in so instructing the jury. It is submitted that the trial court should have instructed the jury to take the letter of January 1, 1920, and consider it in all its parts, and taking the letter as a whole should have considered the testimony upon the question of the weight of the cattle and should have determined whether or not the plaintiff was guilty of a breach of warranty. * * *

"We believe the rule as stated in Mechem on Sales and other authorities should be applied in this case:

" 'The decisive test has been said to be whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment upon a matter of which the vendor has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment. In the former case, there is a warranty, in the latter not.' 2 Mechem on Sales, § 1243."

It was the claim of the plaintiff and is now that:

"The contract in the case at bar was made by the letter of plaintiff of January 1, 1920, and the telegram in reply thereto from defendant. The construction of the language used in plaintiff's letter was a question for the court, it being well settled that where there is no ambiguity in the terms of a written contract it is the province of the court and not of the jury to determine its meaning. *Dudgeon* v. *Haggart*, 17 Mich. 273;

*McKenzie* v. *Sykes*, 47 Mich. 294; *Wagner* v. *Egleston,*
49 Mich. 218; *Gage* v. *Meyers*, 59 Mich. 300; *Hayes* v.
*Cummings*, 99 Mich. 206; *Wenzel* v. *Kieruj*, 168 Mich.
92; *Dowagiac Manfg. Co.* v. *Schneider*, 181 Mich. 538;
*Cutler* v. *Spens*, 191 Mich. 603; *Township School Dist.
of Wakefield* v. *MacRae*, 198 Mich. 693."

In view of what was done we do not need to decide
whether the plaintiff is right in the contention that
the judge should have construed the contract and held
there was no warranty, and directed a verdict for
the plaintiff.    As a matter of fact the court left the
case to the jury to decide whether there was a warranty
or not.

It should not be overlooked that these animals were
sold f. o. b. Columbus, Montana.    There was testimony
of a veterinary surgeon that on January 21, 1920, the
cows weighed between 900 and 1,000 pounds on an
average.

A reference to the charge of the court will show
that the court, after mentioning certain expressions in
the letter, said:

"And did the plaintiff here intend to warrant when
he said that the cattle are all right in every way, did he
intend to warrant—taken in connection with the other
statements that those cattle at that time could later on
be in condition so that they would weigh that much?
Now, unless you are able to find that to be the fact, the
defendant here would not be entitled to recover any
damages by way of recoupment in set-off against the
claim of the plaintiff."

A consideration of those portions of the charge we
have quoted leads us to the conclusion that if any one
has occasion to complain of the charge it is not the
defendant.

Judgment is affirmed, with costs to the plaintiff.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK,
BIRD, and SHARPE, JJ., concurred.